Raymond Warren SCHUENEMANN, Jr.,
Appellant,

v.

The STATE of Texas, Appellee.

No. 46691.

Court of Criminal Appeals of Texas.

Nov. 21, 1973.

William F. Billings, Dallas for appellant.

Henry Wade, Dist. Atty., and Jerome L. Croston, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

The conviction is for burglary of a private residence at night with the intent to commit rape. Punishment was assessed at 99 years' confinement.

The record reflects that between 3:00 and 3:30 o'clock on the morning of July 23, 1970, the complaining witness, a young single woman who lived alone, was awakened by a noise in her apartment.[1] As was her custom, she had gone to bed nude, and with the lights on. She arose and went to the foyer of the apartment, where she saw appellant with a long, thin butcher knife in his hand and one of her stockings over his head and face. She screamed, and he grabbed her and threatened to kill her if she screamed again. After they had conversed for awhile, and at his insistence had taken a shower bath together, they went into her bedroom, where, by the use of threats, and without her consent, he raped her. The knife, which was left in the apartment by appellant, was admitted in evidence as State's Exhibit No. 1. After he had gone, she immediately notified her mother and the police.

Appellant first complains of the introduction in evidence, over his objections, of certain details of his arrest, and of the admission in evidence of a knife found in the trunk of his car.

Appellant was not arrested until June 23, 1971, eleven months after the commission of the burglary. Officer Mount of the Irving Police Department testified that at about 12:45 A.M. on June 23, 1971, he

---

1. The evidence establishes that she occupied and actually used this apartment as her place of residence.

stopped a car driven by appellant because it was being operated without lights. The officer was permitted to testify that appellant's clothes were bloody, and that he found a seven-inch butcher knife, the blade of which was covered with fresh blood, in the car trunk. Appellant's timely objections that the evidence of the bloody knife was inadmissible since it had no connection with the offense for which appellant was on trial, that it involved an extraneous offense, and that it was prejudicial and inflammatory, were overruled, and the bloody knife was admitted as State's Exhibit No. 3. The record establishes that this knife had no connection with the burglary of July 23, 1970, and had no relevance to any issue in the case on trial.

There is no contention by appellant that his arrest and the search of his car were illegal.

Cunningham v. State, 500 S.W.2d 820 (1973), involved a conviction for robbery, where pistols were exhibited by the robbers in the commission of the offense. At the trial, a sawed-off shotgun recovered shortly after the robbery, and on the same afternoon, from the trunk of the car in which appellant was a passenger was admitted in evidence over the defendant's objections. The shotgun had not been used in the robbery. We quote as follows from the opinion of Judge Odom speaking for the Court:

"This Court stated in Hernandez v. State, 484 S.W.2d 754 (Tex.Cr.App. 1972):

" 'This Court has consistently held that the state is entitled to prove the circumstances surrounding the arrest. See Jones v. State, Tex.Cr.App., 471 S.W.2d 413, and cases cited therein. An exception to this rule is where the evidence is inherently prejudicial and has no relevance to any issue in the case.² A decision as to the admissibility of such evidence lies within the discretion of the trial judge, and this court will not re-

verse unless a clear abuse of discretion is shown. See generally, Lanham v. State, Tex.Cr.App., 474 S.W.2d 197.'

"In Footnote 2 of the above quote, we went on to state:

'A good example of how these rules should be applied can be found in the instant case. The trial court sustained appellant's objection to testimony concerning the recovery of a stolen television during the search. Even though such testimony concerned facts surrounding the search and arrest of appellant, it did not relate to proving that he possessed the heroin in question and could only be used to prejudice consideration of whether appellant committed the crime charged. See, Powell v. State, Tex.Cr. App., 478 S.W.2d 95.'

"Since the shotgun in question had no relevance to any issue in the case, the trial judge abused his discretion in admitting it into evidence."

We hold on the authority of Cunningham, supra, that the trial court erred in admitting in evidence the bloody knife found in appellant's car eleven months after the commission of the offense.

As in *Cunningham,* supra, we next consider whether this error was of such harm as might have contributed to the conviction of appellant, and the assessment of the punishment of 99 years. Again, we quote from *Cunningham*:

"The general rule is that a judgment will not be reversed for error in the admission of evidence that did not injure the defendant. See 5 Tex.Jur.2d, Appeal and Error—Criminal, Section 444, p. 696. The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. See Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)."

In *Cunningham*, the Court held the error in admitting the shotgun to be harmless, and affirmed the conviction. The properly admitted evidence of guilt was found to be overwhelming, and not dependent on the "erroneously admitted" shotgun. The punishment was assessed by the trial judge, and at the punishment stage the State proved a prior conviction of robbery by firearms, in which the punishment was set at 10 years, probated.

Appellant, who did not testify at the guilt stage, made a sharp issue at the trial as to whether he, at the time of breaking into the apartment, had the intent to commit rape. His counsel did not dispute that appellant broke into the apartment. His cross-examination of the complaining witness and his argument to the jury was directed to his contention that appellant, who was in the apartment for about three hours, did not form the intent to have sexual intercourse with the complaining witness until long after he had entered the apartment and had spent quite a while there with a naked young woman.

The finding of the knife with fresh blood on it was stressed by the State not only at the time it was placed in evidence, but during the argument to the jury. In his opening argument at the guilt stage, the prosecuting attorney referred to the finding of "that knife in there, that bloody knife." In the closing argument at the guilt stage, he said: "We're allowed to tell you eleven months later, he was arrested with fresh blood all over him and his car and another butcher knife in his trunk." Also, at the punishment stage, in his opening argument the prosecuting attorney frequently reminded the jury of appellant being arrested with the bloody knife in his possession and the fresh blood on his clothes. In his closing argument on punishment, State's counsel further stated:

"Is this evidence? Mr. Billings [defense attorney] said this is not the knife used against [complaining witness], that's right, it's not. This is another knife used at another time. It's evidence. It was found in the Defendant's possession, bloody, and Mr. Billings has seen the laboratory reports, and if that blood was anything other than human, don't you know . . ."

Later State's counsel told the jury:

"I believe you recall that one of the Irving police officers saying something that he sent those knives to a laboratory and received back a report of a laboratory analysis. Now, I know he said blood. I don't recall if he said that analysis said human blood, but you know from that evidence that there are laboratory reports. I will ask you if you can conceive if those reports showed other than human blood, Mr. Billings would leave them out of the evidence. Maybe you can conceive or imagine that. I don't know."

In addition to his remarks in argument, State's counsel, during his examination of Officer Mount, asked:

"So your testimony is—that this is another case entirely, another case this knife is involved in?"

Though objection to this question was sustained, the impression remained that the knife with fresh blood on its blade was involved in another case against appellant.

It is obvious from the above that during the trial State's counsel did not consider the bloody knife as having no weight or as being inconsequential to his case.

As in *Cunningham*, supra, at the punishment stage the appellant was shown to have a prior conviction against his record. He had previously been convicted of burglary of a private residence at night with intent to commit theft, and assessed a term of 5 years, probated. At the guilt stage, there was no evidence of any past criminal record.

In the instant case, the punishment of 99 years was assessed by the jury. In view of the facts of this case, and the proceedings shown by the record, we conclude that

**322**

there is a reasonable possibility that the evidence complained of might have contributed to the conviction, and also to the assessment of the 99 years' punishment. Cunningham v. State, supra.

We find the error in admitting the evidence of the bloody knife to be prejudicial to the rights of appellant, and such error as to call for a reversal of the judgment.

In view of our disposition of the case, it is unnecessary for us to consider the remaining grounds of error.

The judgment is reversed, and the cause is remanded.

Opinion approved by the Court.