Eleanor Jackson **SAUNDERS**, Appellant,

v.

The **STATE** of Texas, Appellee.

William R. **SPENCER**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 55244, 55245.

Court of Criminal Appeals of Texas, Panel No. 3.

Oct. 25, 1978.

Rehearing En Banc Denied Nov. 22, 1978.

Zbranek & Hight, Liberty, for appellants.

Carol S. Vance, Dist. Atty., James C. Brough and John B. Holmes, Jr., Asst. Dist. Attys., Houston, for the State.

Before DOUGLAS, TOM G. DAVIS and VOLLERS, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeals are taken from convictions for criminal solicitation of capital murder. The jury assessed punishment at 30 years for each appellant.

The nature of appellants' contentions requires a review of the evidence.

For approximately three years, appellant William Spencer had been involved in divorce litigation with his wife Helene in Chambers County. Spencer had been a rancher and rice farmer, but at the time of his arrest was working on an oil drilling rig. The other appellant, Eleanor Saunders, owned a washateria in Winnie. The record indicates a romantic involvement between the appellants.

In February, 1975, Saunders met with Lee Ashworth, an ex-convict and former resident of Winnie. At that time a later meeting was arranged between Ashworth and both appellants in Beaumont. Ashworth testified that at this meeting Spencer sought to employ him to kill his wife Helene. Both appellants testified that it was Ashworth that suggested they hire someone to kill Helene. Ashworth, a police informer, called Mike Taylor, a Bureau of Alcohol, Tobacco and Firearms (A.T.F.) agent for the Treasury Department in Houston. Taylor got in touch with Dan Williams, an

officer of the Department of Public Safety Intelligence Division, also stationed in Houston.

On February 28, 1975, Ashworth, Taylor, and Williams went to Winnie and met with Saunders at her washateria. The subjects of killing Helene and burning down a competing washateria were discussed and a later meeting suggested.

Williams again contacted Saunders and arranged for Saunders and Spencer to meet with Taylor and himself at a motel in Houston on March 6, 1975. This meeting and all subsequent meetings were tape recorded by the officers. The foursome met in a restaurant parking lot on March 10, 1975, and $2,500 was paid to the officers to make Helene "disappear."

On March 19, 1975, the last meeting was held on the same parking lot. Another $2,500 was paid and Williams and Taylor showed personal items belonging to Helene as proof that the deed had been done. These items had been obtained from Helene, who was in fact under protective guard in a Houston motel. As the appellants left the officers' car, they were arrested and a pistol seized from Saunders' handbag.

The appellants claimed that due to the past conduct of Helene they thought Ashworth, Taylor, and Williams had been hired by Helene to perpetrate a blackmail scheme. The appellants testified that at no time did they believe that they were dealing with real killers for hire, but merely went along to turn the scheme to their benefit.

In the interest of clarity, a more extensive discussion of these facts will be set out in conjunction with the respective grounds of error.

Appellants were represented by the same retained counsel, both at trial and on appeal. The grounds of error in both cases are identical with one exception. Appellant Spencer alone complains of the trial court's failure to grant his motion for severance.

Appellant Spencer maintains that Art. 36.09 V.A.C.C.P., mandated the severance of his cause from that of Saunders. Article 36.09, supra, provides that when:

"Two or more defendants who are jointly or separately indicted or complained against for the same offense or any offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants; provided that in any event either defendant may testify for the other or on behalf of the state; *and provided further, that in cases in which, upon timely motion to sever, and evidence introduced thereon, it is made known to the court that there is a previous admissible conviction against one defendant* or that a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defendant whose joint trial would prejudice the other defendant or defendants." [Emphasis added.]

When a co-defendant has a prior admissible conviction and the defendant has no prior admissible conviction, this Court has held that severance is mandatory. *Robinson v. State*, Tex.Cr.App., 449 S.W.2d 239; *Calverley v. State*, Tex.Cr.App., 511 S.W.2d 60. The defendant must allege these prerequisites in a motion and offer proof, however, to bring himself within this provision. *Robinson v. State*, supra.

 The State stipulated that Saunders had been convicted of carrying a pistol in 1972, and that Spencer had no prior admissible convictions. The State did not, however, stipulate that Saunders' conviction would be admissible,[1] nor did the appellant show that it was. Thus, the appellant failed to prove the prerequisites necessary to require a severance. Further, by agreement, the conviction was not used for any purpose in the trial. Even assuming that the conviction was on its face admissible, refusal to sever would not have resulted in injury to Spencer. *Rivello v. State*, Tex.Cr. App., 476 S.W.2d 299.

Appellants contend that they were denied their Sixth Amendment right to confronta-

tion by the trial court's refusal to require the prosecution witness Ashworth to reveal his "location" during the year between their arrest and trial. The evidence showed that this refusal was to protect Ashworth from the possible reprisals arising from his activities as an informer in unrelated cases.[2] Counsel for the appellants argued that it was necessary to at least know the town in which the witness was hiding in order to properly cross-examine him on his conduct during the year since appellants' arrest.

On direct examination, Ashworth admitted that he had previously been in the penitentiary in New Mexico and in a county jail in Texas. On cross-examination, the witness further admitted that he had been in the New Mexico penitentiary three times and an Army disciplinary barracks once. He related that he had been convicted of forgery twice and disciplined by the Army for refusal to obey a direct order. It was also shown that he was involved in prior dope deals and had witnessed a murder that he did not report. He stated that since his last release from the penitentiary he had received two years in county jail for robbery and a ten-year probated sentence for burglary. He was on probation at the time of the trial.

Ashworth generally admitted being a thief and that he had made a living at various times by stealing or gambling on pool games. It was shown that since the appellants' arrest Ashworth had been paid $1,500 by the federal government for relocation. He also admitted that he had been arrested for being drunk since his relocation. Defense counsel was given a rap sheet on Ashworth and given leave to recall him to cross-examine on it.

In *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed.2d 624 (1931), the Supreme Court held that the defendant's Sixth Amendment right to confrontation was denied when, with the trial court's ap-

---

1. The stipulation contained in the record reflects that the word "admissible," modifying Saunders' conviction, had been marked through.

2. Evidence was offered that there was a price on Ashworth's head as the result of his undercover work.

proval, the prosecution refused to disclose the address of a witness. The Supreme Court stated that:

"It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. . . . To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial." 282 U.S. at 692, 51 S.Ct. at 219.

This holding was made applicable to state prosecutions in *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968).

This Court has held that in order to be entitled to get a witness' address when disclosure would threaten the safety of the witness or the witness' family, the defendant must show a particularized need. *Richardson v. State*, Tex.Cr.App., 508 S.W.2d 380; *Satterwhite v. State*, 499 S.W.2d 314; *Watson v. State*, Tex.Cr.App., 488 S.W.2d 816; *Winkle v. State*, Tex.Cr.App., 488 S.W.2d 798; *Salas v. State*, Tex.Cr.App., 481 S.W.2d 825; *Baldwin v. State*, Tex.Cr. App., 478 S.W.2d 476. In each of these cases, however, the defendant sought the residential street address, rather than the general location or town as sought in the present case.[3]

In both *Alford* and *Smith*, supra, the Supreme Court states that refusal to disclose the witness' address prevents the defendant from placing ". . . the witness in his proper setting and put the weight of his testimony and credibility to a test . . ." 282 U.S. at 692, 51 S.Ct. at 219, 390 U.S. at 132, 88 S.Ct. at 750. It is this right to an effective cross-examination generally, not the address of the witness specifically, to which these cases hold the defendant is entitled.

■ The scope of cross-examination is within the sound discretion of the trial court. *Alford v. United States*, supra; *Smith v. Illinois*, supra; *Winkle v. State*, supra. The trial judge may properly limit the subject of cross-examination to exclude inquiry as to the town in which the witness resides so long as the defendant is not denied a thorough and effective cross-examination.

■ It is clear in the present case that defense counsel destroyed any credibility that Ashworth may have exhibited on direct examination. The limitation as to asking what town Ashworth lived in in order to protect his safety did not deny the appellants "the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test." We hold that appellants were not denied their Sixth Amendment right to confrontation.

Appellants also challenge the admission into evidence of the three tape recordings made of the appellants' meetings with Officers Williams and Taylor. The major portion of these tapes was played to the jury either during the prosecution's case-in-chief or on rebuttal. The summaries below do not include each detail of the lengthy conversations, but only highlight the most relevant facts.

The first tape recorded a conversation between the appellants and the officers that took place in a Houston motel room an March 6, 1975. It is apparent that the appellants did not know that Williams and Taylor were police officers at this time.

The conversation started with Williams asking what it was the appellants wanted done. Saunders was the first to reply, requesting that the officers destroy a competing washateria. The discussion included in-

---

3. These cases all involved either narcotics agents or the prosecutrix in a rape case. In each case either the name of the town had been revealed or the inquiry went only to the residential street address.

formation necessary to carry out the job, such as location of the washateria, habits of the owners, and the type of building. Saunders was at first indifferent as to whether the owners would also be killed, but later stated that they should be spared. This change of heart was after she was told the price would be higher if the job included the death of the owners.

The conversation then turned to Ashworth. The appellants stated that they did not want him involved any further. The officers assured the appellants that he would be kept out of the dealings.

Williams asked if there was anything else the appellants wanted done. Spencer replied that there were several other things he wanted done, finally, specifying the murder of his wife. The discussion then went to how he wanted his wife killed and details about her personal habits. His desire to have her killed appeared to be based on the protracted and bitter divorce proceedings. The discussion finally centered on whether to stage a car accident or to simply have her "disappear." Details discussed included disposition of jewelry on her person when she was killed, her social life, the kind of car she drove, and her place of employment. Saunders then related two incidents of assault by Helene on her daughter and herself.

It was then agreed that the "package price" for both the destruction of the washateria and the murder would be $5,000. This was to be paid $2,500 in advance and $2,500 after the murder was completed.

Spencer stated that he had paid for a "bump job" before but had gotten no results. It was never clearly established who was to be killed in that transaction. There was then a discussion of the possibility of the officers retaliating against the person hired in the prior "bump job." Saunders drew a map depicting the competing washateria and directions were given on how to get to Spencer's wife's house and place of employment.

The foursome also discussed how the officers were to prove that Helene had been killed, and a picture of Helene was given to them. The parking lot of a nearby restaurant was agreed upon as the next meeting place.

The second tape was made on March 10, 1975, on the parking lot of a Houston restaurant. This meeting was in the car of Williams and Taylor.

The conversation revealed that the appellants had decided that it would be better if Helene "disappeared." Spencer felt that her apparent abandonment of their child would put him in a better position in the divorce proceedings. Another picture of Helene and a set of keys to her car were given to the officers. Details necessary to accomplish both the arson and the murder were discussed. Possible future action in the prior "bump" job was again one of the topics. The first payment of $2,500 was made to the officers. A later meeting for final payment upon proof of the murder was arranged.

The same restaurant parking lot was the scene of the final meeting on March 19, 1975. Again, the conversation was recorded while the foursome sat in the officers' car. It was at this meeting that the officers told the appellants that Helene had been killed. Spencer's reaction was to inquire as to what jewelry had been on Helene at the time of her death. He wanted to know in order to recover any remaining valuables from his wife's relatives. The appellants told the officers that they had intended to allow them to keep any jewelry as a bonus. After first cautioning the officers that it was not a gun, Saunders removed an envelope from under her blouse and gave it to Spencer, who gave it to the officers. This envelope contained the final payment of $2,500.

Both the washateria job and the identity of the person paid for the prior "bump job" were also discussed. One of Saunders' statements sums up the tenor of the conversation in this last tape. Toward the end of this conversation, after the officers had told of the supposed death of Helene, Saunders said:

"Well, I'm just really happy, myself, and proud. And well, when you get around to it, you know, we can do the other one in Winnie. No big hurry, you know, when you get the chance."

The appellants were arrested after they left the officers' car as they entered the restaurant to eat.

■ Appellants allege that these tapes were obtained in violation of their Fourth Amendment rights, relying on *Katz v. United States*, 389 U.S. 347, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1967), and *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1970).

In *Katz v. United States*, supra, the Supreme Court determined that a listening device attached to a phone booth without the consent of either party to the conversation was a violation of the defendant's Fourth Amendment rights. *United States v. White*, supra, involved testimony of police officers who had listened to a conversation between the defendant and an informer sent via a radio transmitter carried by that informant. The Supreme Court in *White* held that this constituted no Fourth Amendment violation. Thus, neither of these cases supports the appellants' contentions.

More in line with the issue presented is *Lopez v. United States*, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), and *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). In *Lopez*, as in the present case, a government agent recorded conversations with the defendant which were later offered into evidence. In *Hoffa*, the Court held that the Fourth Amendment does not protect the defendant's ". . . misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." 385 U.S. 302, 87 S.Ct. 413. In both these cases, no constitutional violation was found.

This Court, in *Thrush v. State*, Tex.Cr. App., 515 S.W.2d 122, held that tape recordings obtained by police of conversations between the defendant and an accomplice, when made with the consent of the accomplice, did not violate the defendant's Fourth Amendment rights. The Court interpreted the *Lopez, Hoffa, Katz,* and *White* line of cases as sanctioning the tactics employed in *Thrush*. 515 S.W.2d at 125.

We hold that the officers' recording of their conversations with the appellants violated no constitutional rights.

■ Appellants also maintain that the use of the tapes at the trial constituted improper bolstering of the officers' testimony because the substance of the tapes was never controverted nor contradicted. Appellants urge that in *Lewis v. State*, Tex.Cr. App., 529 S.W.2d 533, this Court held that such use was improper bolstering. A close inspection of *Lewis* requires the opposite conclusion.

In *Lewis v. State*, supra, this Court reversed a conspiracy conviction for improper jury argument by the prosecutor. The Court, in anticipation of a retrial of that cause, also noted that admission of tapes of conversations between the defendant and a police agent was error because of the extraneous offenses they contained. 529 S.W.2d at 534. In a footnote referring to the defendant's apparent argument of improper bolstering, the Court stated that a *written transcript* of the tapes made available to the jury was improper bolstering of the police agent's testimony. 529 S.W.2d at 535. It seems that technical imperfections had put the exact content of segments of the tape into dispute, thus the written transcript was the State's unsworn version of the conversation. In contrast, the tapes in the present case were played to the jury, and the jury allowed to draw their own conclusions as to the content of the tapes.

More analogous to the present case than *Lewis* is *Thrush v. State*, Tex.Cr.App., 515 S.W.2d 122. In *Thrush*, the tape recordings were used to corroborate an accomplice witness' testimony.[4] In the present case, corroboration of the officers' testimony was

4. See Art. 38.14, V.A.C.C.P.

required under V.T.C.A. Penal Code, Sec. 15.03(b).[5]

Our holding that the tape recordings are admissible is not dependent, however, upon such narrow grounds. "It is now almost universally held that sound recordings relative to otherwise competent evidence are admissible provided a proper foundation has been laid for their admission." 2 C. McCormick & R. Ray, Texas Evidence, Sec. 1465.5, "Sound Recordings" (2d ed. 1956).

Appellants further allege that "the trial court erred in admitting into evidence the tape recordings of the conversations between the defendants and the police officers for the reason that this made the jurors witnesses to a portion of the transaction and as such disqualified them to act as jurors." This contention is patently without merit and does not require discussion.

Appellants also contend that the trial court erred in admitting the portions of the tapes relating to the discussion of extraneous offenses into evidence. The trial court overruled defense counsel's objections after reviewing the tapes and allowed the State to introduce most of the extraneous offenses during either its case-in-chief or on rebuttal.

The extraneous offenses complained of include, among others, the prior kill for hire scheme and the plot to destroy a washateria competing with Saunders' business.

■ As a general rule, evidence of prior criminal conduct that is collateral to the charge on which the defendant is being tried is inadmissible. *Lewis v. State,* Tex. Cr.App., 529 S.W.2d 533; *Thrush v. State,* Tex.Cr.App., 515 S.W.2d 122. This Court,

however, has set out the exceptions to this rule. *Albrecht v. State,* Tex.Cr.App., 486 S.W.2d 97; *Smith v. State,* Tex.Cr.App., 547 S.W.2d 6; *King v. State,* Tex.Cr.App., 553 S.W.2d 105. In *Albrecht,* supra, the Court held that extraneous offenses could be admitted:

"(1) To show the context in which the criminal act occurred—what has been termed the 'res gestae'—under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that they may realistically evaluate the evidence. . . ."

The extraneous offenses included in the tapes revealed both the tenor and setting in which the conversations between the appellants and the officers took place. This evidence showed the context in which the criminal activity occurred. Thus, the extraneous offenses complained of were admissible under the exception contained in *Albrecht,* set out above. See *Calverley v. State,* Tex.Cr.App., 511 S.W.2d 60; *Burns v. State,* Tex.Cr.App., 556 S.W.2d 270.

■ Appellants also contend that Art. 38.24, V.A.C.C.P., entitled them to enter evidence of various incidents involving Spencer's wife.[6] The appellants' theory is that this evidence would show Helene to be a vicious and mean person capable of devising a plot to blackmail her husband in order to receive all his property in the divorce. This, the appellants maintain, would tend to explain why they felt that Williams and Taylor had been hired by Helene to perpetrate such a scheme. In turn, the appel-

---

5. Sec. 15.03(b), supra, provides that no person can be convicted of criminal solicitation ". . . on the uncorroborated testimony of the person allegedly solicited and unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the actor's intent that the other person act on the solicitation."

6. The evidence consisted of testimony from various witnesses and various documents relating to the divorce action. The appellants wanted to show that Helene had: used one of the officers' testimony in the divorce; fired a shot-

gun at Saunders' daughter; said she would break Spencer financially; attacked Saunders' daughter with a baseball bat; tried to run over Spencer's car; tried to cut Spencer's throat; had burned her will, leaving her property to Spencer; struck Spencer in the face; had Spencer committed to a mental institution; and had been unfaithful. The appellants also sought to enter copies of the divorce petition, both original and amended, copies of a proposed property agreement, and a copy of her attorneys' contingent fee contract and settlement.

lants argue, these facts would render reasonable the appellants' decision to go along with the plot in order to make Helene believe she had the upper hand in the divorce, thus causing her to proceed in the divorce without further delay. Spencer testified that a speedy conclusion to the protracted divorce proceeding is what he wanted and why he went along with the plot.

Article 38.24, V.A.C.C.P., provides that: "When part of an act, declaration or conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other, as when a letter is read, all letters on the same subject between the same parties may be given. When a detailed act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood or to explain the same may also be given in evidence."

In *Roman v. State,* Tex.Cr.App., 503 S.W.2d 252, this Court stated that:

"The purpose of this provision [Art. 38.24] is to reduce the possibility of the fact finder receiving a false impression from hearing the evidence of only a part of the conversation, writing, act or declaration. The theory behind the rule is that by allowing the jury to hear the rest of the conversation on the same subject the whole picture will be filled out, removing any misleading effect which may have occurred from introduction of only a portion of the conversation. Obviously this purpose is achieved by receipt of the balance of the conversation on the same subject. But to permit under this rule the introduction of other portions of such a conversation wholly unrelated to the matter initially gone into cannot contribute to achievement of the purpose of the rule. Consequently, it is improper to rely upon this rule as authority for the introduction of such unrelated portions."

The provisions of Art. 38.24, supra, have been held to allow further inquiry when one party introduced an isolated part of an oral confession, or of a witness' statement. *Cerda v. State,* 557 S.W.2d 954; *Westbrook v.*

*State,* Tex.Cr.App., 522 S.W.2d 912. This Court has also found that the use of part of a conversation, a deposition, or a person's military record entitles the opposing counsel to enter evidence from other parts. *Crain v. State,* Tex.Cr.App., 394 S.W.2d 165; *Johnson v. State,* Tex.Cr.App., 378 S.W.2d 76; *Blum v. State,* 166 Tex.Cr.R. 541, 317 S.W.2d 931, cert. den. 359 U.S. 952, 79 S.Ct. 738, 3 L.Ed.2d 760. None of the cases above, however, would give the sweeping coverage to the provisions of Art. 38.24, supra, that the appellants urge.

Article 38.24, supra, guards against the possibility of distortion that could arise from use of a portion of a conversation or transaction out of its proper context. The thrust of this statute is to allow the trier of fact to understand exactly what occurred, rather than why it occurred. The requirements of the statute are met when the acts or words are put into the context in which they occurred. Collateral evidence explaining the motives or reasons for the acts or words are not part of the explanation contemplated by the statute. The testimony and documents offered were not part of the transaction as contemplated by Art. 38.24, supra.

The appellants also challenge the admission of the pistol found in Saunders' purse at the time of her arrest. The purse had been taken from the appellants' car at the request of Saunders. Before giving the purse to Saunders, the police had searched it and found the pistol.

In *Hernandez v. State,* Tex.Cr.App., 484 S.W.2d 754, this Court held that:

"This court has consistently held that the state is entitled to prove the circumstances surrounding the arrest. See *Jones v. State,* Tex.Cr.App., 471 S.W.2d 413, and cases cited therein. An exception to this rule is where the evidence is inherently prejudicial and has no relevance to any issue in this case. A decision as to the admissibility of such evidence lies within the discretion of the trial judge, and this court will not reverse unless a clear abuse of discretion is shown. See generally, *Lanham v. State,* Tex.Cr.App., 474

S.W.2d 197." [Footnote omitted.] 484 S.W.2d at 755; accord, *Schwenermann v. State,* Tex.Cr.App., 501 S.W.2d 319; *Cunningham v. State,* Tex.Cr.App., 500 S.W.2d 820.

In *Cunningham v. State,* Tex.Cr.App., 500 S.W.2d 820, this Court held that the trial court abused its discretion by admitting a sawed-off shotgun found in the defendant's trunk. This shotgun, the Court stated, had not been used during the robbery charged, and thus had no relevance to any issue in the case. 500 S.W.2d at 824. The Court affirmed the conviction, however, holding that since the evidence of guilt was overwhelming no harm resulted from the court's abuse of discretion. See *Atkins v. State,* Tex.Cr.App., 515 S.W.2d 904.

■ In the case at bar, not only is the evidence of guilt overwhelming, but it also is in no way dependent upon the introduction of the pistol in question. *Cunningham v. State,* supra; *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. We conclude that error, if any, in admission of the pistol was at most harmless.

Appellants further contend that the trial court's failure to apply the law on corroboration to the facts of the case was error.[7] The trial court's charge to the jury contained only the abstract law on the corroboration required to convict appellants of criminal solicitation.[8] The appellants objected to the charge and properly preserved that objection. The present case appears to be one of first impression on the question of what a jury charge on criminal solicitation must contain.

V.T.C.A. Penal Code, Sec. 15.03(a), states the general principles of what constitutes an offense under that section. Sec. 15.-03(b), supra, provides:

> "(b) A person *may not be convicted* under this section on the uncorroborated testimony of the person allegedly solicited and unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the actor's intent that the other person act on the solicitation." [Emphasis added.]

Thus, an instruction on Sec. 15.03(b), supra, would go to the basis of a conviction for criminal solicitation.

Sec. 15.03(b), supra, is analogous to Art. 38.14, V.A.C.C.P., which provides:

> "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense com-

---

7. The appellants objected to this omission and submitted a requested charge.

"Therefore, even if you believe from the evidence beyond a reasonable doubt that the Defendants committed the offense as alleged, you may not convict them, or either of them, unless you further believe beyond a reasonable doubt that the testimony of Lee Ashworth, Danny K. Williams, and Mike Taylor is corroborated by evidence other than that given by the said Lee Ashworth, Danny K. Williams, and Mike Taylor, and that the solicitation was made under the circumstances strongly corroborative of both the solicitation itself and the Defendant's intent that the said Danny K. Williams act on the solicitation, but if you do not so believe, or if you have a reasonable doubt thereof, you will find the Defendants not guilty.

"But if you believe from the evidence beyond a reasonable doubt that the testimony of the said Lee Ashworth, Mike Taylor, and Danny K. Williams is corroborated by evidence other than that given by said Lee Ashworth, Mike Taylor, and Danny K. Williams and that the alleged solicitation was made under circum-

stances strongly corroborative of both the alleged solicitation itself and the Defendants' intent that the said Danny K. Williams act on such solicitation, and from all of the evidence you further believe beyond a reasonable doubt that the Defendants, or either of them, at the time and place alleged in the indictment committed the offense as alleged, you will find the Defendants, or either of them, guilty as charged."

This is the form suggested by *Texas Criminal Pattern Jury Charges,* Chapter 15.03 (1975).

8. The trial court's only charge on the law of corroboration was:

"A person may not be convicted for criminal solicitation on the uncorroborated testimony of the person allegedly solicited and unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the actor's intent that the other person act on the solicitation."

This is the form suggested by *S. Willson, Texas Criminal Forms,* Sec. 91.03 (W. Morrison & T. Blackwell, ed. 1977).

mitted; and the corroboration is not sufficient if it merely shows the commission of the offense."

■ No corroboration is required under Art. 38.14, supra, when the defendant takes the stand and admits all acts constituting the crime charged. *Carr v. State,* Tex.Cr. App., 495 S.W.2d 936. An example is when the defendant takes the stand and attempts to establish his defense of entrapment. *Carr v. State,* supra; *Prudhomme v. State,* Tex.Cr.App., 495 S.W.2d 941. In *Prudhomme,* the Court reasoned that once the defendant admits to all the acts constituting the crime the only matter in dispute is the defense of entrapment, not the commission of the offense. 495 S.W.2d at 943. The same reasoning is applicable here.

■ In the present case, the appellants took the stand and admitted that the acts constituting the crime occurred. By their testimony they raised defenses of entrapment and mistake of fact. Thus, when the appellants themselves corroborated the officers' testimony, no instruction as to the corroboration of the officers' testimony was required. The appellants' testimony at trial that they "played along" with what they perceived as a blackmail scheme, giving rise to their defense of mistake of fact, dispenses with the requirement that their intent that the officers "act on the solicitation" be corroborated. In light of the evidence offered by appellants, we find that the court did not err in overruling the appellants' objection to the charge.

■ Appellants also sought an instruction as to the effect of a showing of prior good reputation. The trial court is not required to submit such a charge to the jury. *Gilderbloom v. State,* 160 Tex.Cr.R. 471, 272 S.W.2d 106; *Kirkpatrick v. State,* Tex.Cr. App., 515 S.W.2d 289.

■ Appellants allege that the trial court erred by failing to grant a new trial based on newly discovered evidence of Ashworth's prior police informer activities. This evidence was testimony from a prison inmate that he had been involved in a purchase and sale of guns involving Ashworth. The inmate claimed that Ashworth had sold him the guns and then arranged for him to sell the guns to Mike Taylor, one of the officers involved in the present case. This evidence was discovered when the inmate's wife read a newspaper account of the instant case and contacted the appellants' counsel.

This evidence, if believed, would have served to impeach the testimony of Ashworth and possibly Taylor.

In *Hernandez v. State,* Tex.Cr.App., 507 S.W.2d 209, this Court stated:

"The trial court has considerable discretion in granting or denying a new trial on newly discovered evidence. To show that the court abused its discretion by not granting a new trial, the record must reflect: (1) that the evidence was unknown to the movant before trial; (2) that his failure to discover it was not due to want of diligence; (3) that its materiality was such as would probably bring about a different result on another trial, and (4) that it was competent, not merely cumulative, corroborative, collateral, or impeaching. E. g., *Powell v. State,* Tex. Cr.App., 502 S.W.2d 705."

The inmate's testimony offered at the hearing was both cumulative and impeaching. Further, it is unlikely that a different result would have been reached at another trial. We find that the trial court did not abuse its discretion in refusing to grant a new trial.

■ Appellants also contend that the trial court should have granted a new trial because of the prosecutor's failure to disclose the results of a follow-up investigation of the other "bump job" mentioned in the tapes. It was shown at the hearing on the motion for new trial that an A.T.F. agent had told an assistant district attorney that the person who had supposedly been hired to do that job presented no threat of carrying out the plot. This was learned by the State on the last day of the trial.

"The standard to be applied in cases of suppression or nondisclosure of evidence by the State is whether the testimony may

have had an effect on the outcome of the trial." *Smith v. State,* Tex.Cr.App., 516 S.W.2d 415, 417; *Crutcher v. State,* Tex.Cr. App., 481 S.W.2d 113.

The evidence here would not have made a difference in the outcome of the trial. At best, it could have shown that Spencer had been cheated from the start of the plot concerning the other "bump job," rather than the person he hired having contracted in good faith and then backed out. Thus, the non-disclosure could have had no effect.

Appellants generally challenge the sufficiency of the evidence. Considered in the light most favorable to the State, the evidence as outlined above is amply sufficient to support the appellants' convictions.

The judgments are affirmed.