TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-95-00598-CR







Udom Pukdeesri, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT


NO. A-94-0108-S, HONORABLE JOHN E. SUTTON, JUDGE PRESIDING







 Over his plea of not guilty, a jury found Udom Pukdeesri guilty of criminal solicitation and
fixed his punishment at sixty years imprisonment. See Tex. Penal Code Ann. § 15.03 (West 1994). The
trial court adjudged him guilty and sentenced him accordingly. We will affirm the judgment.


THE OFFENSE


 Section 15.03(a) of the Penal Code specifies the following elements of the offense of
criminal solicitation:


1. The actor "requests, commands, or attempts to induce another,"


2. "to engage in specific conduct,"


3. the solicited conduct "would constitute a felony or make the other a party to its
commission" under the surrounding circumstances as the actor believed them to be, and


4. the actor intends by his solicitation "that a capital felony or felony of the first degree be
committed."



See Tex. Penal Code Ann. §15.03 (a) (West 1994).

 Subsection (b) of the statute forbids a conviction "on the uncorroborated testimony of the
person allegedly solicited and unless the solicitation is made under circumstances strongly corroborative
of both the solicitation itself and the actor's intent that the other person act on the solicitation." See id. §
15.03(b)


SUFFICIENCY OF THE EVIDENCE


 The indictment alleged that Pukdeesri, intending that the offense be committed, attempted
to induce Ronnie Watson to kill and rob his wife's aunt, Pensri Harris, under circumstances that would have
constituted the felony offense of capital murder. The State introduced evidence that tended to show the
following: Pukdeesri asked a neighbor if he knew anyone who would kill Harris and Pukdeesri's wife. The
neighbor contacted the authorities. They asked that the neighbor introduce Pukdeesri to Ronnie Watson,
a peace officer, as part of a plan for Watson to pose as a person willing to commit the murders. The
neighbor made the introduction and the subsequent transaction between Watson and Pukdeesri was
recorded visually and aurally. In the course of the transaction, Pukdeesri asked Watson to kill Harris for
$200.00 plus the jewelry she ordinarily wore. Pukdeesri gave Watson a photograph of Harris, in order
that he might identify her, and wrote her address on a piece of paper for Watson. Pukdeesri also indicated
toward the end of his transaction with Watson, that he wanted to delay an attack on his wife until he first
observed the results of Watson's attack on Harris. Peace officers working with Watson observed the
transaction from a distance. Pukdeesri's wife testified that he had threatened in the past to kill or maim her. 
A witness called by Pukdeesri testified that he told the witness he was going to have a party. We have
summarized the evidence as given by English-speaking witnesses. 

 Pukdeesri contends in his first point of error that the evidence is insufficient to support his
conviction. We will assume he intends to complain the evidence is legally and factually insufficient to
support his conviction. 

 We think the evidence is entirely sufficient to link Pukdeesri to the crime if, indeed, his
transaction with Watson amounted to criminal solicitation. See Richardson v. State, 700 S.W.2d 591,
594 (Tex. Crim. App. 1985). Pukdeesri concedes the transaction, but attacks the sufficiency of the
evidence on the basis of his testimony that his neighbor and Watson misunderstood his poor English and
his use of a Thai word in speaking to them. Pukdeesri is Thai. Pukdeesri explained in his testimony that
he wished to buy and have killed a cow for a feast in order to effectuate a reconciliation with his
wife--apparently in Thailand fresh meat is considered a delicacy and customarily served at such a feast. 
He testified the Thai word for "cook stew" is a word that sounds somewhat like the English word "kill";
and his neighbor and Watson thus misunderstood what he said to them. Pukdeesri further testified that
Watson misunderstood certain English words and phrases spoken by Pukdeesri: whereas he had said "raw
meat," "This is the one to deliver the meat to," "hungry," and "respect me," Watson heard "rob," "you can
do away with her," "ugly," and "suspect me."

 Pukdeesri argues the evidence is insufficient to show the specific intent required by section
15.03(a)--that he intended that Watson commit a capital felony by killing Harris. See Richardson, 700
S.W.2d at 594. 

 Whether to believe Pukdeesri's explanation was a question of credibility for the jury. The
visual and aural recordings of Watson's transactions with Pukdeesri were introduced in evidence and heard
by the jury. Witnesses testified of Pukdeesri's ability to communicate in English with little difficulty. None
of the officers who overheard Watson's transaction with Pukdeesri understood that he intended to secure
a "cow." The jury were able to make their own assessment after listening to the recording of Pukdeesri's
conversations with Watson.

 Viewing the evidence in a light most favorable to the verdict, we are unable to say that a
reasonable fact finder could not have found the elements of the offense. We hold the evidence is not legally
insufficient. See Jackson v. Virginia, 433 U.S. 307, 318-19 (1979); Garrett v. State 749 S.W.2d 784,
802-03 (Tex. Crim. App. 1988). Nor from our review of all the evidence are we able to say that the
verdict is so against the great weight of the evidence as to be clearly wrong and unjust. See Clewis v.
State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996). We hold accordingly.

 Pukdeesri contends the evidence is also legally insufficient because it lacks the
corroboration required by section 15.03(b) of the Penal Code, both as to the solicitation itself and
Pukdeesri's intent. Pukdeesri admitted the transaction with Watson but denied an intent to solicit. As to
the transaction itself, no corroboration was required. See Saunders v. State, 572 S.W.2d 944, 955 (Tex.
Crim. App. 1978). As to Pukdeesri's intent, we believe the circumstances corroborated Watson's
testimony. We refer to the testimony of the neighbor, who also understood Pukdeesri intended to kill
someone, and the tape recording of the transaction during which Pukdeesri spoke English. 

 We overrule point of error one.


ADMISSION OF EVIDENCE


 In a second point of error, Pukdeesri complains "the trial court erred in permitting evidence
of extraneous offenses."

 Pukdeesri's wife testified that on two occasions Pukdeesri threatened to cut her face or
pour acid on it. Another witness testified that on two occasions Pukdeesri attempted to buy from the
witness a machine gun with a silencer, and the witness told him it was illegal. Pukdeesri's objection to the
evidence was overruled. He contends on appeal the trial judge abused his discretion in the matter because
any probative value of such evidence was "substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation
of cumulative evidence." Tex. R. Crim. Evid. 403. Questions of undue delay and cumulative evidence are
not present, leaving only those of unfair prejudice, confusion of the issues, or misleading the jury.

 Identity was not an issue. Moreover, Pukdeesri did not deny that he had previously
threatened his wife. We believe, however, that the probative force of the evidence in question pertained
not to identity, but to "intent," "knowledge," and "absence of mistake," as to which evidence of other
crimes may be admissible under the express provisions of Rule 404(b) of the Rules of Criminal Evidence. 
See Tex. R. Crim. Evid. 404(b).

 The substance of Pukdeesri's testimony, directly contradicting Watson's, raised starkly the
issues of intent, knowledge, and absence of mistake. Concerning those matters, the evidence in question
was logically relevant. Was it unfairly prejudicial in comparison to its probative value? Pukdeesri must
show that it was. We believe he has not. He does not suggest how the questioned evidence raised a
danger that the jury would make a decision based on an improper basis or that the evidence threatened in
some other way the integrity of the fact-finding process. See Long v. State, 823 S.W.2d 259, 272 n.20
(Tex. Crim. App. 1991). See generally Montgomery v. State, 810 S.W.2d 372 (Tex. Crim. App.
1991); Goode, Wellborn, & Sharlot, Texas Rules of Evidence: Civil and Criminal, 33 Texas Practice
§ 403.2, at 130-32 (1993). And we believe the trial judge could reasonably conclude in the circumstances
that the questioned evidence would not confuse or divert the jury from the ultimate issues of whether
Pukdeesri committed the conduct alleged. See Goode, Wellborne, and Sharlot, supra, at 133-34. We
hold the trial judge did not abuse his discretion in choosing to admit the evidence. We overrule point of
error two. 

 We affirm the trial court judgment.



 

 John Powers, Justice

Before Justices Powers, Jones, and Kidd

Affirmed

Filed: May 1, 1997

Do Not Publish



m. App. 1988). Nor from our review of all the evidence are we able to say that the
verdict is so against the great weight of the evidence as to be clearly wrong and unjust. See Clewis v.
State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996). We hold accordingly.

 Pukdeesri contends the evidence is also legally insufficient because it lacks the
corroboration required by section 15.03(b) of the Penal Code, both as to the solicitation itself and
Pukdeesri's intent. Pukdeesri admitted the transaction with Watson but denied an intent to solicit. As to
the transaction itself, no corroboration was required. See Saunders v. State, 572 S.W.2d 944, 955 (Tex.
Crim. App. 1978). As to Pukdeesri's intent, we believe the circumstances corroborated Watson's
testimony. We refer to the testimony of the neighbor, who also understood Pukdeesri intended to kill
someone, and the tape recording of the transaction during which Pukdeesri spoke English. 

 We overrule point of error one.


ADMISSION OF EVIDENCE


 In a second point of error, Pukdeesri complains "the trial court erred in permitting evidence
of extraneous offenses."

 Pukdeesri's wife testified that on two occasions Pukdeesri threatened to cut her face or
pour acid on it. Another witness testified that on two occasions Pukdeesri attempted to buy from the
witness a machine gun with a silencer, and the witness told him it was illegal. Pukdeesri's objection to the
evidence was overruled. He contends on appeal the trial judge abused his discretion in the matter because
any probative value of such evidence was "substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misl