Tarra Fairtanya GUTHRIE, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–03–00041–CR.

Court of Appeals of Texas,
Waco.

Oct. 13, 2004.

John M. Hurley, Waco, for appellant.

B.J. Shepherd, Hamilton County Dist. Atty., Martin L. Peterson, Hamilton County Asst. Dist. Atty., Meridian, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

Tarra Fairtanya Guthrie was tried before a jury for solicitation of capital murder. The jury returned a guilty verdict and assessed punishment at ten years' imprisonment, probated for ten years, and a $5,000 fine. Guthrie contends that the trial court erred in failing to instruct the jury on the requirements for corroboration under section 15.03(b) of the Texas Penal Code.

Finding error but no egregious harm, we will affirm the judgment.

## BACKGROUND

Bobby Moore and Don Schwartz were employees at Watson's Ranch and Farm. Don and Laura Schwartz were married and expecting a baby. Don became involved with Tarra Guthrie. Don and Laura separated and began a bitter custody battle over their young child. Moore testified that at the time of the custody hearings, when Laura would not leave town, Guthrie said to Moore: "Well, we may just have to kill her to get her to go." At the time, Moore thought Guthrie was just blowing off steam and was angry. Don got temporary custody of their child and Laura went to Colorado. Moore testified regarding Guthrie's comments: "Laura is going to cost them [referring to Guthrie and Don] a lot of money, and [ ] she wished she could find somebody to go out

there and take care of her, it would save them a lot of money." Moore still thought Guthrie was just angry.

However, later Guthrie said to Moore: "You thought about going to Colorado and taking care of Laura for me?" Moore testified that this time he felt a coldness and seriousness in Guthrie's voice. When Moore asked Guthrie if she was serious, she responded: "Dead serious, I am very serious" "How much would you do this for?" Moore said $5,000. Guthrie responded: "That sounds good." Guthrie said that she could drive Moore to Colorado. Moore asked: "When you want to get all of this done?" and Guthrie responded: "Well, as soon as possible." Moore became worried that Guthrie was serious. He called Kerri Watson, Moore's employer, and said "I knew I wasn't going to do it." Moore then called Ranger Ramos who decided to tape record a conversation between Moore and Guthrie and listen to the conversation simultaneously with a handheld radio. The recording of this conversation was admitted into evidence.

## JURY CHARGE ERROR

Guthrie contends that the trial court should have instructed the jury that corroboration is required in a criminal solicitation case. The Penal Code states:

A person may not be convicted under this section on the uncorroborated testimony of the person allegedly solicited and unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the actor's intent that the other person act on the solicitation.

TEX. PEN.CODE ANN. § 15.03(b) (Vernon 2003).

Guthrie did not object at trial to the lack of a corroboration instruction. Even without an objection, the court may find error involving an issue upon which a trial court has a duty to instruct without a request or objection from either party. *See Posey v. State*, 966 S.W.2d 57, 62 (Tex.Crim.App.1998). However, when an error in the charge is not the subject of a timely objection to the trial court, the accused must show that the error was "fundamental" and reversal is proper if the error is "so egregious and creates such harm that it deprives the accused of a 'fair and impartial trial.'" *Almanza v. State*, 686 S.W.2d 157, 171–72 (Tex.Crim.App. 1984) (on rehearing).

The jury charge instructed that a person commits the offense of criminal solicitation if:

with intent that a capital felony be committed, she requests, commands, or attempts to induce another to engage in specific conduct that, under the circumstances surrounding her conduct as the actor believes them to be, would constitute a capital felony or make the other a party to its commission.

*See* TEX. PEN.CODE ANN. § 15.03(a) (Vernon 2003). The jury charge also instructed that a person commits the felony offense of capital murder

when such person employs another to commit murder for remuneration or the promise of remuneration, and the person so employed commits the murder pursuant to such employment.

*See id.* § 19.03(a)(3) (Vernon 2003).

Guthrie contends that the trial court should have also instructed the jury on the corroboration requirement. She argues that section 15.03(b) is part of the "law applicable to the case" and under article 36.14 the court was required to include it in the jury instruction. TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2004–2005).

■ The corroboration requirement of section 15.03(b) reflects a legislative determination that accomplice testimony implicating another person should be viewed with a measure of caution. *Blake v. State,* 971 S.W.2d 451, 454 (Tex.Crim.App.1998). Thus, it is the jury's task to determine whether the testimony has been sufficiently corroborated. *Id.* at 455.

■ Section 15.03(b) is analogous to article 38.14 of the Texas Criminal Procedure Code, which requires a conviction based on accomplice witness testimony to be corroborated by other evidence that tends to connect the defendant with the offense. TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979); *Richardson v. State,* 700 S.W.2d 591, 594 (Tex.Crim.App.1985) (citing *Saunders v. State,* 572 S.W.2d 944, 954–55 (Tex.Crim.App.1978), and stating that section 15.03(b) and article 38.14 should be read in conjunction with each other). Therefore, reading these two sections together, the corroboration requirement in criminal solicitation must connect the defendant to each of the essential elements—here, corroboration as to the solicitation itself and corroboration as to the defendant's intent that the solicitation be acted upon. *Id.* (interpreting the word "strongly" in section 15.03(b) as not requiring a different standard as article 38.14, but requiring an additional safeguard that the corroboration go to both the solicitation and the solicitor's intent).

■ The State contends that a section 15.03(b) instruction is relevant only if it is possible the defendant could be convicted on the uncorroborated testimony of the person solicited and it "should be given only when raised by the evidence." It argues that the instruction is not required since there is a tape recording of the solicitation and that giving a section 15.03(b) instruction in this case would have required the court to comment on the weight of the evidence by implying the tape recording was insufficient to corroborate Moore's testimony. The State says that Moore's testimony regarding the solicitation was not uncorroborated because of the tape recording and that the jury could not have possibly relied solely on Moore's testimony to determine guilt.

■ We agree with Guthrie that a section 15.03(b) instruction is required in a criminal solicitation case. *See Saunders,* 572 S.W.2d at 954–55. For criminal solicitation, corroboration is required regardless of whether the person allegedly solicited to commit the crime is an accomplice witness. *Thomas v. State,* 31 S.W.3d 422, 426 (Tex. App.-Fort Worth 2000, pet. ref'd); *Varvaro v. State,* 772 S.W.2d 140, 143 (Tex.App.-Tyler 1988, pet. ref'd). Including this instruction would not have been a comment on the weight of the evidence by the court and it should be given even if there is obviously other evidence to corroborate the testimony of the person solicited. Therefore, the trial court's failure to instruct the jury regarding corroboration in this case was error because the trial court failed to instruct on the "law applicable to the case." *See Claxton v. State,* 124 S.W.3d 761, 765 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd).

### Harm Analysis

■ Having found error, our next step is to determine whether the error caused egregious harm. *See Abdnor v. State,* 871 S.W.2d 726, 731 (Tex.Crim.App.1994) (a review of charge errors is a two-step process). To evaluate whether the charge error caused egregious harm, we consider (1) the entire jury charge, (2) the evidence produced at trial, the contested issues and the weight of the probative evidence, (3) the attorneys' arguments, and (4) any other relevant information revealed by the record of the trial as a whole. *See Ovalle*

*v. State,* 13 S.W.3d 774, 786–87 (Tex.Crim. App.2000).

▮▮▮▮ Corroborating evidence is reviewed in the light most favorable to the verdict. *Gill v. State,* 873 S.W.2d 45, 48 (Tex.Crim.App.1994). Egregious harm is found only if the corroborating evidence is so weak and unconvincing that a rational juror would find the prosecution's case clearly and significantly less persuasive if they had been instructed properly. *Saunders v. State,* 817 S.W.2d 688, 692 (Tex. Crim.App.1991). To analyze the sufficiency of corroborating evidence,

> the reviewing court must eliminate from consideration the evidence of the [person solicited], and then examine the evidence of the other witnesses to ascertain if it is of an incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient.... The corroborative testimony need not directly link the accused to the crime or be sufficient in itself to establish guilt.... However, a conviction cannot stand if the corroborative evidence does no more than point the finger of suspicion towards an accused.

*Castaneda v. State,* 682 S.W.2d 535, 537–38 (Tex.Crim.App.1984). It follows here that the State was required to produce evidence, exclusive of Moore's testimony, that Guthrie requested, commanded, or attempted to induce Moore to kill Laura Schwartz and that Guthrie intended capital murder be committed.

*Jury Charge*

The jury was instructed that, to convict appellant of the offense, it must find beyond a reasonable doubt that Guthrie, with intent that a capital felony be committed, requested or attempted to induce Moore to engage in conduct that would constitute capital murder. However, the charge failed to instruct the jury that the law requires corroboration of testimony of the person solicited as to the solicitation itself and Guthrie's intent that Moore act on her solicitation.

*State of the Evidence*

▮▮▮▮ State's Exhibits 1 and 2, the original and a copy of a taped recording of a conversation between Moore and Guthrie, sufficiently corroborate the testimony of Moore as to solicitation of capital murder of Laura Schwartz. *See Varvaro v. State,* 772 S.W.2d 140, 143 (Tex.App.-Tyler 1988, pet. ref'd) (finding a tape recording alone was sufficient evidence to corroborate the actual oral solicitation). The incriminating portions of the tape recording include: Guthrie answering Moore's question whether Guthrie was serious about Laura with "Yep. I want her gone"; Guthrie answering affirmatively when asked by Moore if she wanted Moore to "go to Colorado and put her out of service"; Guthrie answering affirmatively when asked by Moore if she wanted Laura dead; Guthrie telling Moore that she would give him half of the money before and half after the murder; and Guthrie offering to take Moore to Colorado where Laura was residing. Thus, the tape recording corroborates Moore's testimony with respect to the solicitation by Guthrie and to Guthrie's intent that Moore kill Laura Schwartz.

Ranger Ramos corroborated Moore's testimony regarding the identification of the voices on the tape recording. *See Morrison v. State* 631 S.W.2d 242, 243–44 (Tex.App.-Fort Worth 1982, pet. ref'd) (requiring corroboration of accomplice's testimony regarding the identification of the voices on the tape recording). Appellant did not dispute that the voices on the tape were hers and Moore's.

*Attorneys' Arguments and the Record as a Whole*

The arguments of counsel and the remainder of the record in this case do not

exacerbate the jury charge error. There are no explicit references to a corroboration requirement or lack thereof.

*Conclusion*

The tape recording sufficiently corroborates Moore's testimony, and the jury would rationally have been able to convict Guthrie based on the independent evidence. The independent evidence is not so weak and unconvincing that, had the jury been properly instructed, it would have found the State's case significantly less persuasive. After reviewing the jury charge as a whole, the state of the evidence without considering Moore's testimony, the arguments of counsel and the record as a whole, we conclude that under the facts of this case the error in failing to give the corroboration instruction was not so egregious and did not create such harm that it deprived Guthrie of a fair and impartial trial.

We overrule Guthrie's sole issue and affirm the judgment.