**Gena Carol CLAXTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–02–00869–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 13, 2003.

---

Robert "Bob" Wicoff, Houston, TX, for Appellant.

Lori Deangelo Fix, Assistant District Attorney, William J. Delmore, III, Chief Prosecutor, Appellate Division, Charles A. Rosenthal, Jr., District Attorney—Harris County, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and ALCALA.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Gena Carol Claxton, pleaded not guilty to solicitation of capital murder. The jury found appellant guilty; the trial court sentenced her to 15 years' imprisonment and assessed a $3,500 fine. In two issues presented for review, appellant contends that the trial court erred in failing to instruct the jury on the law regarding accomplice-witness corroboration and that trial counsel was ineffective for failing to request the corroboration instruction. We affirm.

### Facts

On December 6, 2001, Charley Martin, nicknamed "Tiny," was visiting Houston. Tiny belonged to a motorcycle gang associated with the Banditos. He had been a member for 40 years and held the position of "enforcer." Appellant approached Tiny in a bar. The two talked as they drank, and appellant brought up the subject of her boyfriend, Darrell Asher. Appellant complained that Asher treated her badly.

She dialed Asher's number, then handed the phone to Tiny. To intimidate Asher, Tiny told him that he was a biker and he made some threats. Tiny and appellant continued to discuss her relationship with Asher and appellant called Asher a second time; Tiny again spoke to Asher and threatened him.

Appellant told Tiny that she wished her boyfriend would "disappear forever and get out of her life." When Tiny asked appellant to explain her comment, she replied that she wanted her boyfriend out of her life permanently, to which Tiny responded that this could be done. Appellant and Tiny left the bar and continued their negotiations at a friend's apartment. Appellant asked what it would take to get it done. Tiny told her it would cost $2,000. Appellant showed Tiny a "wad" of money with a $100 bill on the top. To prove that neither of them was a law enforcement officer, they both disrobed to reveal that neither was equipped with a recording device. They agreed to meet again at the bar in a few days for further discussion.

The following day, Tiny decided to speak with the police about the conversation. Tiny met with Detective Marlon Magee, who provided him with a wire to wear during his next encounter with appellant. During the next few days, Tiny attempted to meet with appellant in the bar; appellant was apparently there, but not at the same time as was Tiny. After the fourth failed attempt to meet with appellant, Tiny refused to wear the wire again, thus terminating his relationship with the police.

Detective Magee was aware of the hostility between appellant and Asher because he had investigated incidents of telephone harassment by appellant. He also knew that Asher had been no-billed for an alleged assault of appellant and that appellant was angry about this. Asher had recorded the harassing phone calls and had given the tapes to the police. On the morning of December 7, 2001, Asher contacted Detective Magee to inform him of the threatening phone calls he had received from Tiny.

Later that day, appellant called her ex-husband, Danny Heslop, and told him that she had found a guy from Louisiana named Tiny who was going to take care of her problem. The following day, when appellant went to Heslop's house, she encountered Jonathan Allyn, who had recently been released from a five-year prison term. Appellant thought Allyn had ties or connections from prison and asked him whether he or someone he knew would "knock off her boyfriend." Appellant told Allyn that she had found someone named Tiny to take care of her problem for $2,000, but that she could not afford the price and was looking for a cheaper alternative. Allyn indicated he was not interested and appellant told him to keep their conversation secret.

Detective Magee met with appellant on December 18, 2001. He informed her of his investigation of a solicitation of capital murder, to which appellant initially acted dumbfounded. When he showed appellant a picture of Tiny, however, appellant began to cry and gave a written statement admitting her culpability.

### Jury Charge Error

In her first issue, appellant argues that the trial court should have *sua sponte* charged the jury on the corroboration requirement in a criminal solicitation case. The Penal Code provides that:

A person commits the offense of criminal solicitation if, with intent that a capital felony or felony in the first degree be committed, he requests, commands, or attempts to induce another to engage in specific conduct that, under the circumstances surrounding his conduct as the

actor believes them to be, would constitute the felony or make the other a party to its commission.

Tex. Pen.Code. Ann. § 15.03(a) (Vernon 2003).

The Penal Code further provides that:

A person may not be convicted of criminal solicitation on the uncorroborated testimony of the person allegedly solicited, unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the actor's intent that the other person act on the solicitation.

Tex. Pen.Code. Ann. § 15.03(b) (Vernon 2003). We read section 15.03(b) in conjunction with article 38.14 of the Texas Code of Criminal Procedure, which addresses accomplice-witness corroboration in non-solicitation cases. *See Richardson v. State,* 700 S.W.2d 591, 594 (Tex.Crim. App.1985). The word "strongly" in section 15.03(b) emphasizes the need for an additional safeguard, but does not indicate a different standard. *Id.* Rather, it mandates corroboration of both the solicitation itself and the defendant's intent that the solicitation be acted on. *Id.*

### Standards of Review

■ Customarily, a defendant must object to an error in the charge to raise the issue on appeal. *Almanza v. State,* 686 S.W.2d 157, 172 (Tex.Crim.App.1985). The court may conclude there is error, however, even without an objection, if the error involves issues "upon which a district court has a duty to instruct without a request or objection from either party." *Posey v. State,* 966 S.W.2d 57, 62 (Tex. Crim.App.1998) In such a case, we reverse only if the error caused egregious harm. *See Almanza,* 686 S.W.2d at 172.

■ In a criminal solicitation case, corroboration is required regardless of whether the person allegedly solicited to commit the crime is an accomplice witness. *Thomas v. State,* 31 S.W.3d 422, 426 (Tex. App.-Fort Worth 2000, pet. ref'd). The trial court's failure here to instruct the jury regarding the corroboration requirement was error because the court failed to provide the "law applicable to the case." *See* Tex.Code Crim. Proc. Ann. art. 36.14 (Vernon Supp.2003) (mandating that trial court submit charge setting forth applicable law).

■ Having found error, we must determine whether the error here caused egregious harm. *See Almanza,* 686 S.W.2d at 172. To assess the degree of harm, we examine (1) the entire jury charge; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Id.*

■ We review the corroborating evidence in the light most favorable to the verdict. *Gill v. State,* 873 S.W.2d 45, 48 (Tex.Crim.App.1994). Harm is egregious only if the corroborating evidence is so weak and unconvincing that, had they been properly instructed, rational jurors would find the State's case clearly and significantly less persuasive. *Saunders v. State,* 817 S.W.2d 688, 692 (Tex.Crim.App.1991).

■ The test used to evaluate corroboration is to eliminate from consideration the accomplice testimony and then determine whether there is other incriminating evidence connecting the defendant with the crime. *Id.* In determining the sufficiency of the corroboration, we consider the combined weight of the non-accomplice evidence even if it is entirely circumstantial. *Id.* It is not necessary that the corroboration directly link the defendant with the crime or that it be sufficient

evidence in itself to establish guilt. *Richardson,* 700 S.W.2d at 594.

### Harm Analysis

#### The Jury Charge

■ The jury was instructed that, to convict appellant of the offense, it had to determine beyond a reasonable doubt that appellant, with the intent that a capital murder be committed, asked another person to commit the capital murder. However, it did not instruct the jury that corroboration of both the act and the intent was required. There was no other error in the charge.

#### The State of the Evidence

Appellant has conceded actually soliciting Tiny to murder her ex-boyfriend; however, she contends that she lacked the requisite intent and that the evidence other than Tiny's testimony is not "strongly corroborative" of her intent that Tiny act on her solicitation.

Excluding Tiny's testimony, the record reveals incriminating evidence connecting appellant to the crime, establishing both solicitation and intent. Appellant signed a written confession, admitting she solicited Tiny to murder Asher. Moreover, appellant told others about the solicitation. She called Heslop and told him she had found someone from Louisiana who was going to take care of her problem and teach Asher a lesson. Appellant then told Allyn that she had found a biker named Tiny who was going to kill Asher, but that she wanted to find someone who would do it for a lower price.

The non-accomplice evidence also corroborates appellant's requisite intent. In *Thomas,* two non-accomplice witnesses testified that the defendant made vague statements to them indicating that it "would be nice" if the complainant could be "gotten out of the way" and that he "would like something done" to the complainant, without specifically mentioning either murder or money. 31 S.W.3d at 425–26. The *Thomas* court held that this testimony could have been viewed by the jury as strongly corroborative of both the solicitation itself and the requisite intent. *Id.* Here, appellants statements to Heslop and Allyn—which did include the words "murder" and "money"—were even more likely to have been viewed by the jury as strongly corroborative of intent.

Evidence of motive, veiled threats, and an earlier solicitation of another person to commit capital murder constituted sufficient corroboration of both solicitation and intent. *Ganesan v. State,* 45 S.W.3d 197, 204 (Tex.App.-Austin 2001, pet. ref'd). Here, we also have motive, threats, and multiple solicitations. Appellant and Asher had a history of violence and hostility between them, and appellant referred to this hostility when soliciting Tiny. Appellant left Asher numerous harassing phone calls and used Tiny to threaten Asher. In her conversation with Allyn, appellant asked him if he knew anyone who would commit the crime for less than the price she had agreed upon with Tiny. This request created the inference that appellant wanted her boyfriend to be "taken care of," but was simply looking for a more affordable method. In addition, after Allyn informed appellant he was not interested in her proposition, appellant told him to remain quiet and keep their conversation secret, thereby creating an inference of intent. *See Wilson v. State,* 7 S.W.3d 136, 141 (Tex.Crim.App.1999) (noting that attempted witness tampering was evidence of consciousness of guilt); *Hernandez v. State,* 819 S.W.2d 806, 810 (Tex.Crim.App. 1991) ("Intent can be inferred from acts, words, and conduct of accused.").

*Arguments of Counsel & Record as a Whole*

Neither the arguments of counsel nor the remainder of the record reveal any significant statements or evidence that tended to exacerbate or ameliorate the jury charge error. There are simply no references to corroboration or the necessary standard of proof.

*Conclusion*

The non-accomplice evidence in the aggregate was sufficient to corroborate Tiny's testimony, and the jury would rationally have been able to convict appellant based on this independent evidence. The evidence is not so weak and unconvincing that, had the jury been properly instructed, it would have found the State's case significantly less persuasive. After reviewing the jury charge as a whole, the state of the evidence without considering the accomplice testimony, the arguments of counsel, and the record as a whole, we conclude that the accomplice testimony was adequately corroborated; accordingly, we hold that appellant has not shown egregious harm.

We overrule the first issue.

### Ineffective Assistance of Counsel

In her second issue, appellant contends that counsel was ineffective because he did not ask for the jury charge to include the corroboration requirement.

To show ineffective assistance of counsel, an appellant must demonstrate (1) that counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms and (2) that, but for counsel's errors, there is a reasonable probability the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064–65, 2068, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53, 55 (Tex.Crim.App.1986). A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. *Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999). It is appellant's burden to prove a claim of ineffective assistance of counsel by a preponderance of the evidence. *Id.* at 813. An appellant must satisfy both prongs of the *Strickland* test, or the claim of ineffective assistance will fail. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069; *Garcia v. State,* 57 S.W.3d 436, 440 (Tex.Crim.App. 2001).

Counsel's failure to ask for the jury charge to include the corroboration requirement was below "an objective standard of reasonableness based on prevailing professional norms." Nevertheless, given our disposition of the first issue, we conclude that appellant cannot satisfy the second *Strickland* prong and show that, but for counsel's error, there is a reasonable probability the result of the proceeding would have been different.

We overrule appellant's second issue.

We affirm the trial court's judgment.