Opinion issued October 19, 2006












     





In The
Court of Appeals
For The
First District of Texas




NO. 01–05–00764–CR




LORI ELISE COOPER, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 179th District Court
Harris County, Texas
Trial Court Cause No. 1016264




MEMORANDUM OPINION

          Appellant, Lori Elise Cooper, was charged by indictment with capital murder,
to which she pleaded not guilty. See Tex. Pen. Code Ann. § 19.03 (Vernon Supp.
2005). A jury found appellant guilty of the lesser-included offense of murder and
assessed punishment at 60 years’ confinement. See id. § 19.02 (Vernon 2003).
          In six issues, appellant contends that (1) the non-accomplice witness evidence
was legally insufficient to connect her with the commission of the offense; (2) the
trial court erred in admitting evidence of an extraneous offense; (3) the trial court
erred in allowing the State to obtain testimony through leading questions; (4) the trial
court erred in allowing the State to confer with a witness during a break in the
witness’s testimony; (5) the trial court erred in allowing the testimony of a witness
after he remained in the courtroom in violation of Rule of Evidence 614; and (6) the
trial court erred in admitting a prejudicial photograph into evidence.
          We affirm.BackgroundDuring the 2001–2002 school year, appellant, then 16 years of age, told several
friends that the complainant, Gary Cooper, her biological father, was abusive toward
her and that she wanted him dead. Appellant asked her friend, Trusten Anderson,
three times to kill the complainant, as outlined in a specific plan. When Anderson
refused, appellant ended their relationship. 
          Throughout the school year, appellant visited the home of her friend, Kelton
Yates, after school. Appellant told Yates and his family that the complainant was
abusive toward her and that she wanted to kill him or would get someone to kill him. 
Appellant told Yates’s mother, Tabitha Burrell, that the complainant was worth a lot
of money dead. 
          Toward the end of the school year and the early part of the summer of 2002,
appellant dated Yates periodically and also dated Andre Reece. Appellant reported
to Reece that she had been pregnant with Reece’s baby, but that she had miscarried
due to being hit in the stomach by the complainant. Appellant asked Reece to kill the
complainant. Reece refused and the relationship ended.
          In mid-July, appellant asked another friend, Arturo “Cheerio” Villarreal, to kill
the complainant. Appellant told Villarreal that she would leave a key or the garage
door opener in the mailbox when she and her mother left for summer school classes
in the morning. Appellant told Villarreal to go into the complainant’s bedroom and
to kill him. Appellant told Villarreal to make it look like a robbery and to take
whatever he wanted as payment. Villarreal refused.
          On or about July 26, 2002, appellant offered Yates and his friend, Kiondrix
Smith, $5,000 of the money appellant anticipated from the complainant’s life
insurance proceeds to kill the complainant. Appellant told them that she would leave
the garage door opener in the mailbox when she and her mother left for school in the
morning. Yates and Smith were to go into the house and kill her father. Yates and
Smith accepted the offer.
          On Saturday, August 3, 2002, before the plan had been carried out, Yates’s
mother, Burrell, called appellant’s mother, Wanda Cooper, to report that appellant
might be pregnant with Yates’s baby. Burrell and Yates met with appellant, Cooper,
and the complainant at appellant’s house to discuss the matter. Appellant’s parents
insisted that any pregnancy must be aborted. Appellant and Yates wanted to keep the
baby. A heated exchange occurred between Yates and the complainant. While the
group waited, appellant took a pregnancy test and the results indicated that appellant
was not pregnant. The parents agreed that appellant and Yates would no longer be
permitted to see each other unless supervised. 
          The next day, on Sunday, August 4, appellant reported to her parents that she
could not find her house keys. On Monday, September 5, appellant called Yates and
told him that he should act to kill her father that night rather than wait until a morning
before school, as originally planned. Appellant told Yates that she had left her house
keys in his closet.
          That night, Yates called Smith and, shortly after 1:00 a.m., Smith drove Yates
to appellant’s house and parked three houses away so the car would not be
recognized. Yates and Smith walked to appellant’s house, where Yates unlocked the
burglar bars outside the front door and Smith rang the doorbell. When the
complainant opened the door, Yates stabbed him three times in the chest with a
serrated hunting knife. Yates and Smith then fled. 
          Wanda Cooper had been awakened by the doorbell that night and had initially
gone downstairs with the complainant. Cooper saw Yates standing outside the
burglar bars and went back upstairs to put on clothes. When she returned, the
complainant was sitting on a bench on the front porch and she could see two men
running away. Cooper saw the wounds and asked the complainant who had caused
them. The complainant replied, “Kelton.” 
          The emergency services report indicates that the 911 dispatcher received a call
from Cooper at 1:57 a.m. Cellular phone records indicate that appellant called Smith
immediately after the murder, at 1:56 a.m., and again at 2:09 a.m. In addition, the
records show that appellant called Yates five times prior to the murder, between the
hours of 9:13 p.m. and 12:34 a.m. that night, and four more times following the
murder, between 2:32 a.m. and 4:42 a.m. 
          The responding emergency personnel and investigating officers testified that 
appellant was unemotional at the scene. Appellant and Cooper did not accompany
the complainant to the hospital; rather, they went directly to the police station. The
next morning, before appellant and Cooper returned home, a family friend discovered
that a key, later identified as appellant’s, had been broken off in the lock of the
burglar bars at appellant’s house.
          The medical examiner determined that the complainant died from a stab wound
that penetrated his heart. In 2003, Yates was found guilty of murder and assessed 60
years’ confinement. Smith was not charged. In early 2005, after a tip was phoned in
to police, appellant was charged with capital murder for having employed Yates to
commit the murder of the complainant for remuneration or the promise of
remuneration. The jury was charged on the law of parties. The jury found appellant
guilty of the lesser-included offense of murder and this appeal ensued.
Corroboration of Accomplice Witness Testimony
In her first issue, appellant contends that the non-accomplice evidence was
legally insufficient to connect her to the commission of the murder.
A.      Standard of Review
Article 38.14 of the Texas Code of Criminal Procedure provides that a
conviction cannot stand upon accomplice testimony unless it is corroborated by other
evidence that tends to connect the accused with the offense. Tex. Code Crim. Proc.
Ann. art. 38.14 (Vernon 2005); Solomon v. State, 49 S.W.3d 356, 361 (Tex. Crim.
App. 2001); Cao v. State, 183 S.W.3d 707, 710 (Tex. App.—Houston [1st Dist.]
2005, pet. ref’d). Corroborating evidence is insufficient if it merely shows the
commission of an offense. Tex. Code Crim. Proc. Ann. art. 38.14; Solomon, 49
S.W.3d at 361; Cao, 183 S.W.3d at 710. In assessing the sufficiency of corroborative
evidence, we “eliminate the accomplice testimony from consideration and then
examine the remaining portions of the record to see if there is any evidence that tends
to connect the accused with the commission of the offense.” Solomon, 49 S.W.3d at
361; Cao, 183 S.W.3d at 710. The non-accomplice evidence need not directly link
the accused to the commission of the offense nor need be sufficient on its own to
establish the accused’s guilt beyond a reasonable doubt. Solomon, 49 S.W.3d at 361;
Cao, 183 S.W.3d at 710. Article 38.14 merely requires some non-accomplice
evidence tending to connect the accused with the crime, not non-accomplice evidence
for every element of the crime. Cao, 183 S.W.3d at 711 (citing Vasquez v. State, 56
S.W.3d 46, 48 (Tex. Crim. App. 2001)).
Although appellant complains that the evidence is legally insufficient to sustain
her conviction, the Court of Criminal Appeals has declined to impose legal and
factual sufficiency standards on a review of accomplice witness testimony under
Article 38.14. Cathey v. State, 992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999);
Cao, 183 S.W.3d at 710.
 
 
B.      The Law
          A person commits murder if that person (1) intentionally or knowingly causes
the death of an individual or (2) intends to cause serious bodily injury and commits
an act clearly dangerous to human life that causes the death of an individual. Tex.
Pen. Code Ann. § 19.02. A person is criminally responsible for an offense
committed by the conduct of another if, acting with intent to promote or assist the
commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the
other person to commit the offense. Id. § 7.02(a)(2) (Vernon 2003).
C.      Analysis
          The trial court instructed the jury that the witness Yates was an accomplice as
a matter of law and instructed the jury to consider whether the witness Smith was an
accomplice as a matter of fact. In addition, the trial court instructed the jury as to the
corroboration required. Eliminating the testimony of Yates and Smith from
consideration, we conclude that the record contains independent evidence that tends
to connect appellant with the commission of the offense.
The State offered the testimony of witnesses Anderson, Reece, and Villarreal,
who each testified that appellant asked him to kill the complainant. Anderson
testified that, on three occasions, appellant asked him to kill the complainant. On the
third occasion, appellant urged Anderson to come over to her house and pretend to
start an argument. Then, when the complainant came outside to break it up, Anderson
was to kill him. Anderson declined. 
Reece testified that appellant asked him to kill the complainant and that he
declined. In addition, Reece testified that appellant had reported to him that she was
pregnant with Reece’s baby but that she had miscarried due to being hit by the
complainant. 
Villarreal testified that appellant asked him kill the complainant. Villarraeal
testified that appellant was to leave a garage door opener or a key in the mailbox and
that he and Yates were to go into the house and kill the complainant. Villarreal
testified that appellant stated that she wanted it to look like a robbery and that he and
Yates could take whatever they wanted from the house as payment. Villarreal also
testified that appellant told him that there would be a lot of insurance money. 
Evidence of prior solicitation of another person to commit murder constitutes
sufficient corroboration. See Claxton v. State, 124 S.W.3d 761, 766 (Tex.
App.—Houston [1st Dist.] 2003, pet. ref’d) (examining solicitation of capital
murder). Further, Villarreal testified that appellant had admitted to him that she had
previously attempted to poison the complainant. Villarreal stated that “[the appellant]
poisoned his insulin or in a drink or something. [The complainant] was in the hospital
doing real bad; but he pulled through.”
The State also offered the testimony of Yates’s mother, Burrell, who testified
that appellant told her that she wanted the complainant dead and that he was worth
a lot of money dead. Yates’s sister, Itaya Shelley, testified that appellant told her she
was going to get someone to kill her father. Suspicious statements by the accused are
appropriate to consider in determining whether accomplice testimony is sufficiently
corroborated. See Killough v. State, 718 S.W.2d 708, 711 (Tex. Crim. App. 1986).
          In addition, the State introduced cellular telephone records that tend to connect
appellant to the commission of the offense. Cooper testified that, upon finding the
complainant wounded on the front porch, she screamed for appellant to call 911. 
Cooper testified that appellant called 911 from the house telephone. The emergency
services record indicates that Cooper, herself, called 911 at 1:57 a.m., and the cellular
phone records indicate that appellant was on her cellular telephone with Smith at the
time, having called him at 1:56 a.m. The record shows that appellant called Smith’s
cellular telephone immediately after the murder, at 1:56 a.m. and at 2:09 a.m. In
addition, the records show that appellant called Yates five times before the murder
that night, between the hours of 9:13 p.m. and 12:34 a.m., and that appellant called
Yates again four more times after the murder, between 2:32 a.m. and 4:42 a.m. The
call records are strong circumstantial evidence that tends to connect appellant to the
offense because it shows that appellant was in direct communication with the actors
immediately before and after the commission of the crime. See Longoria v. State, 154
S.W.3d 747, 756 (Tex. App.—Houston [14th Dist.] 2004, pet. ref’d).
The State also introduced evidence that appellant’s own key was found broken
off in the lock to the burglar bars the morning after the murder. Two days prior to the
murder, appellant had summoned her parents away from golfing with friends to let
her back into the house, stating that she could not find her keys. The next day, Yates
murdered the complainant. The morning after the murder, appellant’s key was found
broken off in the lock of the burglar bars. 
A rational jury could have reasonably concluded that the non-accomplice
evidence tends to connect appellant with the commission of the offense. The
corroborating testimony provides evidence that appellant was seeking to have the
complainant killed. See Claxton, 124 S.W.3d at 766. The corroborating evidence
shows that appellant was in contact with the actors in the hours leading up to and
after the murder was committed and suggests that appellant furnished the key that
permitted the actors to access the complainant. We conclude that the non-accomplice
evidence is sufficient to tend to connect appellant with the commission of the offense
and to support the conviction. 
Accordingly, we overrule appellant’s first issue.
 
Extraneous Offense
In her second issue, appellant contends that the trial court erred in admitting
an extraneous offense of appellant (namely, an attempt by appellant to poison the
complainant) because “the State did not provide Appellant adequate notice of the
State’s intention to offer any poisoning attempt.” Appellant also contends that the
extraneous offense evidence was inadmissible under Texas Rule of Evidence 403 and
404(b), and that she was irreparably harmed by the admission of the evidence.
A.     The Applicable Law and Standard of Review
          Evidence of extraneous offenses is not admissible to prove the character of the
person in order to show action in conformity therewith. Tex. R. Evid. 404(b). 
However, evidence of other crimes, wrongs, or acts may be admissible for purposes
“such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity,
or absence of mistake or accident, provided that upon timely request by the accused
in a criminal case, reasonable notice is given in advance of trial of intent to introduce
in the State’s case-in-chief such evidence other than that arising in the same
transaction.” Id. Even if admissible under 404(b), “evidence may be excluded if its
probative value is substantially outweighed by the danger of unfair prejudice.” Tex.
R. Evid. 403. 
In all murder prosecutions, the State (or the defendant) “shall be permitted to
offer testimony as to all relevant facts and circumstances surrounding the killing and
the previous relationship existing between the accused and the deceased, together
with all relevant facts and circumstances going to show the condition of the mind of
the accused at the time of the offense.” Tex. Code Crim. Proc. Ann. art. 38.36
(Vernon 2005). Article 38.36 of the Texas Code of Criminal Procedure allows the
showing of the relationship between the accused and the deceased. Bisby v. State,
907 S.W.2d 949, 957 (Tex. App.—Fort Worth 1995, pet. ref’d). 
It is within the trial court’s discretion to determine whether extraneous
evidence has relevance apart from character conformity and whether the danger of
unfair prejudice outweighs the probative value of the evidence. Moses v. State, 105
S.W.3d 622, 627 (Tex. Crim. App. 2003). The trial court’s determination as to the
admissibility of the evidence is reviewed for an abuse of discretion. Id. If the trial
court’s ruling lies within the zone of reasonable disagreement, we will affirm. Id. 
B.      Adequate Notice
Trial in the instant case began on June 16, 2005. Appellant contends that, in
March of 2005, she requested notice of the State’s intent to use extraneous offenses
and that the State failed to provide such notice until Friday, June 3, 2005, which her
counsel did not personally receive until Monday, June 6, 2005. Appellant complains
that she was harmed because her counsel did not have sufficient time to investigate
the State’s allegation that she tried to kill the complainant by poisoning him.


 The
State contends that it gave notice in advance of trial, pursuant to rule 404(b). 
The record shows that, on March 23, 2005, the trial court ordered the State to
furnish for inspection “[a]ll extraneous offenses with date, time, [and] place, which
may be admissible against the defendant . . . on or before 10 days prior to trial.”
(Emphasis added.) The record shows that, on May 26, 2005, appellant filed a “Rule
404(b) Request for Notice of Intent to Offer Extraneous Conduct.” The record shows
that, also on May 26, 2005, the trial court again ordered that the State produce
extraneous offense evidence for inspection “on or before 10 days prior to trial.” Trial
began June 16, 2005. Hence, pursuant to the trial court’s order, the State’s notice was
due on or before June 6, 2005. 
The record shows that, on June 2, 2005, the State filed a “Notice of Intent to 
Use Evidence of Other Crimes, Wrongs, or Acts,” which included a paragraph
concerning appellant’s attempt to kill the complainant by poisoning him. Appellant
concedes that she received notice on June 3, 2005. Appellant does not challenge the
substance of the notice; rather, she solely challenges its timeliness. We conclude that
the State’s notice was timely filed.
C.      Admissibility
          At trial, the State put on the testimony of Villarreal, as follows:
          [State]:        What did she say she had tried to do herself?
          [Defense]:   Your Honor, I object to that as leading.
[Court]:       Overruled. The question is on the table. Let’s get it out there.
[Villarreal]: She tried to poison him in some sort of way. He was in the
hospital, and I think she poisoned his insulin or in a drink or
something. He was in the hospital doing real bad; but he pulled
through and made it well, to my knowledge. I don’t know how
true it was, but that’s what I was told.



Prior instances of violence toward the victim relate to the relationship between
the defendant and the victim. Jaggers v. State, 125 S.W.3d 669, 670 (Tex.
App.—Houston [1st Dist.] 2003, pet. ref’d). Because the attempted poisoning was
an act of violence that related to the relationship appellant had with her father, it was
admissible under 404(b). 

          Although the evidence is admissible under 404(b), we must determine if “its
probative value is substantially outweighed by the danger of unfair prejudice” by
considering (1) how compellingly the evidence serves to make more or less probable
a fact of consequence, (2) the potential for the evidence to impress the jury in some
irrational but indelible way, (3) how much trial time the proponent needs to develop 

the evidence, and (4) how great is the proponent’s need for the evidence. See Tex.
R. Evid. 403; Montgomery v. State, 810 S.W.2d 372, 389–90 (Tex. Crim. App. 1990);
Jaggers, 125 S.W.3d at 670. 

Here, the evidence makes more probable the fact that appellant sought to kill
the complainant. The potential for the evidence to impress the jury in an irrational
but indelible way is not significant because the court gave a limiting instruction in the
jury charge informing the jurors that the extraneous offense evidence could only be
considered for the issue of motive, intent, preparation, or plan. Although appellant
complains that the limiting instruction was not sufficient, appellant states in her brief
that “[t]he so-called poisoning attempt testimony was not compelling.” Finally, the
State’s need for the evidence was significant because this was the sole evidence that
appellant had made any direct attempts to kill the complainant herself. We conclude
that the trial court reasonably concluded that the evidence was admissible. We hold
that the trial court did not abuse its discretion in admitting the evidence.

Accordingly, we overrule appellant’s second issue.

 
 
Leading Questions

In her third issue, appellant contends that the trial court erred in “permitting the
State to elicit testimony through the use of a minimum of seventy-seven leading
questions over the course of trial.”

A.      Standard of Review and Applicable Law

“Leading questions should not be used on the direct examination of a witness
except as may be necessary to develop the testimony of the witness.” Tex. R. Evid.
611(c). However, “[t]he asking of leading questions is seldom a ground for reversal.” 
Uhl v. State, 479 S.W.2d 55, 57 (Tex. Crim. App. 1972). Permitting leading
questions on direct examination is within the sound discretion of the trial court. 
Wyatt v. State, 23 S.W.3d 18, 28 (Tex. Crim. App. 2000). To demonstrate that the
trial court abused its discretion, an appellant must identify the specific leading
questions he challenges and must show that he was unduly prejudiced by the use of
those leading questions. Id. 

B.      Analysis

Here, appellant has specifically identified “77 questions” asked by the State
during trial that she contends the trial court improperly permitted. First, we note that
in the majority of the questions that appellant has identified (some 59 of the 77), the
trial court did not “permit” the question; rather, the trial court sustained appellant’s
objections and, in some cases, admonished the State not to lead the witness or
instructed the State to rephrase the question. Notwithstanding, appellant has failed
to show how she has been unduly prejudiced by the use of the questions she has
identified. See id. Appellant merely asserts that harm is “obvious” and that “the
ultimate harm was the 60-year sentence Appellant received.” Appellant states that
the prosecutor “took advantage of the leniency allowed with leading questions” and
urges this Court to make an example of him and “the harm that results from such
behavior.” We cannot presuppose undue prejudice. 

We cannot conclude that the trial court has abused its discretion. Accordingly,
we overrule appellant’s third issue.

Conferring with Witnesses

In her fourth issue, appellant contends that the trial court erred in “allowing the
State to confer with the State’s material witness, Kelton Yates, in the holdover cell,
over a lunchbreak, and while the State still had Yates on direct examination, and
before appellant had the opportunity to cross-examine Yates.” In the body of her
brief, appellant also contends that the trial court improperly permitted the State to
confer with witness Shelley during a break. 

 
 
Article 36.06 of the Texas Code of Criminal Procedure requires that, when, as
here, “the Rule”


 has been invoked, the trial court shall instruct the witnesses not to
discuss the case with anyone, except by permission of the trial court. See Tex. Code
Crim. Proc. Ann. art. 36.06 (Vernon 1981). 

          In the first instance, appellant complains of the following, that occurred while
the State had Yates under direct examination: 

          [State]:        Well, at some point, did you eventually agree to kill Gary
Cooper?
          [Yates]:       Yes.
          [State]:        And who asked you to do that?
          [Yates]:       Lori.
          [State]:        And did she give you any incentive or promise of anything to
make you do that?
          [Yates]:       No, Sir.
          [State]:        She didn’t promise you any money to do that?
          [Yates]:       No, Sir.
          [State]:        She never did?
          [Yates]:       No, Sir.
          [State]:        Do you recall giving me a statement in connection with this case?
          [Yates]:       Yes, Sir.
          [State]:        Do you recall telling me that she offered you $5,000?
          [Defense]:   Your Honor, I’m going to object to the improper impeachment.
          [Court]:       Sustained.
          [Defense]:   And I’d like to approach the bench.
          [Court]:       We’re going to have the jury disregard the last question. And,
ladies and gentlemen, would you please go back to the jury room.
          (Jury out)
          (Lunch recess)
          [Defense]:   The witness is under the Rule. Counsel, over the break, based
upon the witness’s statement, he’s being placed in a position
where he can confer with this witness relative to testimony that he
has given that is different from what he anticipated, we’d ask that
counsel not have access to this witness while we’re on a break.
          [Court]:       Denied
          (Lunch recess)
          . . . .
          (Continuing in the jury’s hearing:)
          [State]:        Mr. Yates, did we have a chance to talk over the break?
          [Yates]:       Yes, Sir.
           . . . .
          [State]:        All right. Now did Lori Cooper ever offer you money to kill her
father?
          [Yates]:       No.
          [State]:        Did she ever offer you and anyone else money to kill her father?
          . . . .
          [Yates]:       Yes.
          [State]:        Who did she offer money to to kill her father?
          [Yates]:       Me and Kiondrix Smith.



           Appellant contends that the trial court improperly denied his request that the
State not be permitted to confer with its witness over the break, solely relying upon
Perry v. Leeke, 488 U.S. 272, 109 S. Ct. 594 (1989). We find Perry inapposite to the
case at hand. In Perry, the issue was whether a defendant’s right to counsel had been
violated when the trial court ordered the defendant not to confer with his attorney
over a recess. Id. at 281–82, 109 S. Ct. at 600–01. It is within the trial court’s
discretion to permit counsel to confer with its own witness during a recess. See Tex.
Code Crim. Proc. Ann. art. 36.06 (Vernon 1981). Here, the State conferred with
Yates during the break as permitted by the trial court. 

          Appellant contends that Yates’s testimony changed over the break. After
examining the testimony, it appears that Yates maintained his answer in the negative,
as to whether appellant offered to pay him, until the question itself was changed. 
Appellant has not shown that the trial court’s decision to allow the State to confer
with Yates constituted an abuse of discretion. 

          In the second instance, appellant complains of the following:

[State]:        Let me put something else on the record. I talked to Ms. Shelley
more yesterday after Court recessed; and we determined that the
timeframe for this statement would have been sometime in the
early part of 2002, which would have been within six to eight
months of this offense.

 
 
 
Appellant contends that it was improper for the State to have spoken with
Shelley. However, the record does not reflect that appellant objected to this statement
or to Shelley’s continued testimony. Accordingly, any error has not been preserved. 
Tex. R. App. P. 33.1(a); Valle v. State, 109 S.W.3d 500, 509–10 (Tex. Crim. App.
2003).

We hold that the trial court did not abuse its discretion. Accordingly, we
overrule appellant’s fourth issue.

Violation of the Rule

In her fifth issue, appellant contends that the trial court erred in allowing the
testimony of a witness who remained in the courtroom in violation of Rule of
Evidence 614 (“the Rule”).

A.      Standard of Review

“The Rule” provides that upon the request of a party the trial court must, or
may on its own motion, order witnesses excluded from the courtroom during trial to
prevent witnesses from hearing the testimony of other witnesses. Tex. R. Evid. 614. 
The purpose is to prevent the testimony of one witness from influencing the testimony
of another. Russell v. State, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005); Phillips
v. State, 64 S.W.3d 458, 459 (Tex. App.—Houston [1st Dist.] 2001, no pet.). If a
witness violates the Rule by remaining in the courtroom after the Rule is invoked, the
testimony of that witness may be admitted or excluded at the trial court’s discretion. 
Bell v. State, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996). On appeal, the trial court’s
decision to admit testimony will not be disturbed absent an abuse of that discretion. 
Id. We determine whether the appellant was harmed by the witness’s violation. Id. 
Harm is established by showing that (1) the witness actually conferred with or heard
testimony of other witnesses and (2) the witness’s testimony contradicted the
testimony of a witness from the opposing side or corroborated testimony of a witness
he had conferred with or heard. Id.

B.      Analysis

          Here, the Rule was invoked at the start of trial. The record reflects that, on
June 23, 2005, counsel for the defense advised the trial court that the State’s witness,
Arturo Villarreal, had been present in the courtroom during testimony in the case. 
Villarreal testified that he had been present for the testimony of Rose Smith, the
custodian of records for the Houston Police Department. Hence, Villarreal actually
heard the testimony of another witness. See Bell, 938 S.W.2d at 50. 

However, Villarreal’s testimony did not corroborate Rose’s testimony because
the testimonies were unrelated. Rose’s testimony consisted of providing the
admissibility foundation for the 911 call made by appellant on the night her father
was killed. Villarreal’s testimony concerned his relationship with appellant,
appellant’s proffered plan to kill the complainant, and the fact that Yates was present
during that conversation. 

Appellant contends that Villarreal heard more than he admitted because
Villarreal was present in the courtroom for several hours and Rose’s testimony lasted
approximately 15 minutes. Appellant contends that Villarreal also heard testimony
that day from Dwayne Wolf, Deputy Chief Medical Examiner for Harris County, and
from Detective Curtis Scales of the Houston Police Department. There is no evidence
in the record to indicate how long Villarreal was present or what, if any, other
testimony Villarreal actually heard. 

We cannot conclude on the record before us that the trial court abused its
discretion by allowing Villarreal to testify. Accordingly, we overrule appellant’s fifth
issue.Admissibility of Evidence

In her sixth issue, appellant contends that the trial court erred in admitting
State’s Exhibit Number 40, which appellant characterizes as an inflammatory and
prejudicial photograph of the deceased complainant.

This complaint has not been preserved. When the State offered a series of
photographs for admission, including the photograph in question, appellant did not
object to admissibility of the photograph in question. After the trial court admitted
the photograph into evidence, appellant said, “Of course, those that we did not object
to, we would object based on the fact that the probative value outweighs the
prejudicial effect.”

In order to preserve a complaint for appellate review, the record must show that
the complaint was made to the trial court by a timely request, objection, or motion. 
Tex. R. App. P. 33.1. “To be timely, an objection must be raised at the earliest
opportunity or as soon as the ground of objection becomes apparent.” Penry v. State,
903 S.W.2d 715, 763 (Tex. Crim. App. 1995). Because appellant did not object to
the photograph before it was entered into evidence, we hold that appellant has not
preserved an error for review.

We overrule appellant’s sixth issue.

Conclusion

We affirm the judgment of the trial court.

 

 


 
Laura Carter Higley

Justice



Panel consists of Justices Nuchia, Jennings, and Higley.



Do not publish. See Tex. R. App. P. 47.2(b).