

# NUMBER 13-08-00431-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**CLIFFORD WAYNE GARDNER,**           **Appellant,**

**v.**

**THE STATE OF TEXAS,**           **Appellee.**

---

### On appeal from the 24th District Court
### of Jackson County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Vela
Memorandum Opinion by Chief Justice Valdez**

Appellant, Clifford Wayne Gardner, was convicted by a Jackson County jury of unlawful delivery of a controlled substance, cocaine, in an amount of more than one gram but less than four grams, a second-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(c) (Vernon Supp. 2009). The indictment contained four enhancement paragraphs alleging that Gardner had four prior felony convictions. After finding that all four enhancement paragraphs were true, the jury assessed punishment at life

imprisonment in the Institutional Division of the Texas Department of Criminal Justice with no fine. *See* TEX. PENAL CODE ANN. § 12.42(d) (Vernon Supp. 2009) (providing that "if it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses . . . on conviction he shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years"). By two issues, which can be categorized as one, Gardner asserts that his conviction was not supported by sufficient evidence because the conviction is based upon uncorroborated accomplice-witness and covert-witness testimony. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the evening of April 20, 2005, James Rivera, while serving as an informant for law enforcement, allegedly purchased 2.5 grams of cocaine from Gardner. Rivera testified that he had worked as an informant for law enforcement on two other occasions and that he was paid $100 for his participation in the underlying transaction. In organizing the transaction, Rivera arranged for an acquaintance of his, April Matulik, to contact Gardner so that Rivera, at the direction of law enforcement, could purchase the cocaine. Rivera agreed to bring Matulik along when he met with Gardner because Matulik desired to purchase some cocaine for herself. Prior to picking up Matulik, Rivera contacted Ron Garrett, a police officer formerly employed by the Edna Police Department. Officer Garrett met with Rivera at a local transfer station, otherwise known as the city dump. While there, Officer Garrett and Jackson County Deputy Sheriff Joe Garcia searched Rivera's clothing, person, and vehicle for contraband, and Rivera fitted himself with an audio recording device that was hidden on his inner thigh. Once Rivera was fitted with the audio recording device, the officers tested the device to ensure that it worked properly. After concluding

2

that the device was in good working order, the officers provided Rivera with $200 to make the cocaine purchase.

Rivera picked up Matulik at her apartment. Matulik provided Rivera with directions to the place where they would meet up with "Seven" or "Seven Days" to purchase cocaine. At trial, several witnesses testified that Gardner's street name was "Seven" or "Seven Days." Rivera's conversations with Matulik and his interaction with Gardner were recorded by the hidden audio recording device. The officers proceeded to the meeting place and parked about three-tenths of a mile away from where the transaction occurred; however, Officer Garrett admitted that, despite their proximity to the meeting place, they were not able to see much of the transaction. In any event, the hidden audio recording device demonstrated that Rivera purchased ten rocks of crack cocaine from Gardner in exchange for the $200 that was provided by law enforcement. After purchasing the cocaine from Gardner, Rivera conversed with Gardner while Matulik also purchased some cocaine for use in her crack pipe. Gardner agreed to allow Rivera to contact him directly for any future drug purchases. Once the meeting had concluded, Rivera dropped off Matulik at her apartment and drove to the dump to meet with Officer Garrett for debriefing. Once he arrived at the dump, Rivera turned over the ten rocks of crack cocaine and described the particulars of the meeting with Gardner to Officer Garrett.

Approximately two weeks after the transaction, Rivera identified Gardner from a photo lineup as the individual who had sold him the cocaine. In addition, Matulik confirmed that Gardner had sold cocaine to Rivera on this occasion. Gardner was subsequently arrested. Tests conducted on the substances that Rivera received from Gardner revealed that the substances constituted 2.5 grams of cocaine.

After a jury trial, Gardner was convicted of unlawful delivery of a controlled

3

substance.  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(c).  Because he had been convicted previously of four felonies, the jury sentenced Gardner to life imprisonment with no fine.  *See* TEX. PENAL CODE ANN. § 12.42(d).  Gardner later filed a motion for new trial and a motion in arrest of judgment; however, those motions were overruled by operation of law.  *See* TEX. R. APP. P. 21.8(c).  This appeal ensued.

## II. STANDARD OF REVIEW

### A.    The Accomplice-Witness Rule

Article 38.14 of the Texas Code of Criminal Procedure provides that a defendant cannot be convicted of a crime based solely on the testimony of an accomplice unless that testimony is "corroborated by other evidence tending to connect the defendant with the offense committed."  TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005).  The Texas Court of Criminal Appeals has described the accomplice-witness rule as "a statutorily imposed review" that "is not derived from federal or state constitutional principles that define the legal and factual sufficiency standards."  *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007).  We evaluate the "sufficiency of corroboration evidence under the accomplice-witness rule" by first eliminating the accomplice's testimony from consideration and then examining the remainder of the record for non-accomplice witness "evidence that tends to connect the accused with the commission of the crime."  *See* TEX. CODE CRIM. PROC. ANN. art. 38.14; *see also Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008).  In applying this standard, we view the evidence in the light that most favors the jury's verdict.  *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008) (citing *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994)).

In *Patterson v. State*, we noted that "[t]he tends-to-connect standard presents a low

4

hurdle for the State." 204 S.W.3d 852, 859 (Tex. App.–Corpus Christi 2006, pet. ref'd). "We consider the combined weight of the non-accomplice evidence, even if [that evidence] is entirely circumstantial." *Claxton v. State*, 124 S.W.3d 761, 765 (Tex. App.–Houston [1st Dist.] 2003, pet. ref'd). In fact, "[t]he non-accomplice evidence need not be sufficient in itself to establish the accused's guilt beyond a reasonable doubt. Nor is it necessary for the non-accomplice evidence to directly link the accused to the commission of the offense." *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997) (citation omitted); *see Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996) ("While the accused's mere presence in the company of the accomplice before, during, and after the commission of the offense is insufficient by itself to corroborate accomplice testimony, evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense."); *see also Gill*, 873 S.W.2d at 48; *Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993). Further, "unlike extrajudicial confessions, testimony of an accomplice need be corroborated only as to facts 'tending to connect the defendant with the offense committed' and not as to the corpus delecti itself." *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007) (quoting *Gribble v. State*, 808 S.W.2d 65, 71 n.13 (Tex. Crim. App. 1990)); *see Munoz*, 853 S.W.2d at 559; *see also Taylor v. State*, 10 S.W.3d 673, 685 (Tex. Crim. App. 2001).

In some instances, insignificant circumstances afford the most satisfactory evidence of guilt and corroboration of the accomplice-witness's testimony. *Patterson*, 204 S.W.3d at 860; *see Dowthitt*, 931 S.W.2d at 249; *Munoz*, 853 S.W.2d at 559. "In applying the test of the sufficiency of the corroboration, each case must be considered on its own facts and circumstances." *Reed v. State*, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988).

"Independent evidence [that] generally tends to prove that an accomplice witness's version of events is true, rather than the [defendant's version], is considered corroborative, even if it concerns a mere 'detail,' as opposed to a substantive link between the defendant and commission of the offense." *Beathard v. State*, 767 S.W.2d 423, 430 (Tex. Crim. App. 1989). "The corroborating evidence may be [either] circumstantial or direct." *Reed*, 744 S.W.2d at 126; *Granger v. State*, 683 S.W.2d 387, 392 (Tex. Crim. App. 1984). Because each case must rest on its own facts, corroboration does not require a set quantum of proof. *Malone*, 253 S.W.3d at 257. "The accomplice witness rule is satisfied if there is *some* non-accomplice evidence which *tends* to connect the accused to the commission of the offense alleged in the indictment." *Hernandez*, 939 S.W.2d at 176 (emphasis in original); *see Trevino v. State*, 991 S.W.2d 849, 852 (Tex. Crim. App. 1999) (noting that the absence of "smoking gun" evidence does not invalidate evidence that connects the defendant to the offense).

## B.     The Covert-Witness Rule

Article 38.141 of the code of criminal procedure provides that:

> A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

TEX. CODE CRIM. PROC. ANN. art. 38.141 (Vernon 2005). Texas courts have held that we apply the same standards governing the accomplice-witness rule to the covert-witness rule; thus, we must ignore the testimony of the informant, or covert witness, and examine the record to see if any other evidence tended to connect the defendant with the offense

6

committed.  *See Smith v. State*, 211 S.W.3d 476, 478 (Tex. App.–Amarillo 2006, no pet.) (citing *Dennis v. State*, 151 S.W.3d 745, 749 (Tex. App.–Amarillo 2004, pet. ref'd); *Young v. State*, 95 S.W.3d 448, 451 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd)); *Cantelon v. State*, 85 S.W.3d 457, 459-60 (Tex. App.–Austin 2002, no pet.) (concluding that article 38.141 requires the same standard of corroboration for an informant witness as that of article 38.14, the accomplice-witness rule); *see also Jeffrey v. State*, No. 13-03-381-CR, 2004 Tex. App. LEXIS 2276, at **8-10 (Tex. App.–Corpus Christi Mar. 11, 2004, no pet.) (mem. op., not designated for publication) (same).  Furthermore, we review the corroborating evidence in the light most favorable to the jury's verdict.  *Smith*, 211 S.W.3d at 478 (citing *Dennis*, 151 S.W.3d at 749).

## III. ANALYSIS

In his sole issue on appeal, Gardner argues that the evidence supporting his conviction is insufficient because the evidence provided by Rivera and Matulik was not sufficiently corroborated.  Gardner further argues that accomplice-witness testimony may not be corroborated by covert-witness testimony and vice versa.  The State asserts that the record contains sufficient evidence tending to connect Gardner to the offense, thus corroborating both the accomplice-witness testimony and the covert-witness testimony provided at trial.

### A.    Matulik's Status as an Accomplice Witness and Rivera's Status as a Covert Witness

At the outset of our analysis, we note that the parties do not dispute that:  (1) Matulik was an accomplice to the underlying offense; and (2) Rivera was a covert witness.  *See*

*Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004) ("An accomplice participates with a defendant before, during, or after the commission of a crime and acts with the required culpable mental state."); *see also Simmons v. State*, 205 S.W.3d 65, 72 (Tex. App.–Fort Worth 2006, no pet.) (noting that covert witnesses or informants are individuals who work with law enforcement for self-interested reasons, often for compensation or to have charges against them reduced or dismissed). As such, we must ignore the testimony of both Matulik and Rivera to assess whether the remaining evidence in the record tends to connect Gardner to the underlying offense and thus corroborates Matulik and Rivera's testimony. *See Malone*, 253 S.W.3d at 257; *Smith*, 211 S.W.3d at 478.

**B.     Corroboration of Matulik and Rivera's Testimony**

The record reflects that the State called several witnesses to corroborate the testimony provided by both Rivera and Matulik, including Officer Garrett, Ruben Rendon Jr., a drug section supervisor for the Texas Department of Public Safety crime lab in Corpus Christi, and Ronnie Kovar, a jailer with the Jackson County Sheriff's Office. Officer Garrett described the contents of the recorded audiotape of the purported transactions between Gardner, Rivera, and Matulik.[1] Officer Garrett testified that he and Deputy Garcia used the recording device to listen to the conversations that Rivera had with both Gardner and Matulik as they were happening. Officer Garrett also testified as to his conversations with Rivera at the debriefing, where Rivera recounted that Gardner had sold him ten rocks of cocaine and gave Officer Garrett the ten rocks of cocaine that had been allegedly

---

[1] The recorded audiotape was played in open court, and a transcript of the conversations contained on the audiotape was provided to the jury for demonstrative purposes only. Several witnesses opined on the contents of the conversations, including Rivera's repeated references to "Seven" as the supplier of the cocaine.

purchased from Gardner. Officer Garrett noted that Rivera had worked for law enforcement on two prior occasions, which indicated that law enforcement trusted Rivera. Furthermore, Officer Garrett stated that: (1) he and Deputy Garcia strip-searched Rivera prior to the transaction to make sure that he did not have any contraband; (2) Rivera attached the recording device to himself; and (3) Officer Garrett and Deputy Garcia ensured that the recording device was working properly prior to the meeting. Officer Garrett and Deputy Garcia followed Rivera as he traveled to pick Matulik up and later to the location where Rivera and Matulik met Gardner. However, Officer Garrett admitted that he positioned the car that he and Deputy Garcia were in three-tenths of a mile away from the location of the transaction, which allowed for a clear reception for the audiotape but prevented them from clearly observing the purported transaction. Officer Garrett testified that Matulik verified in his presence that Gardner had delivered the cocaine to Rivera and, approximately two weeks after buying cocaine from Gardner, Rivera came into the police station and identified Gardner from a photographic lineup as the individual who had sold him the cocaine.

Rendon testified that he tested the substances that Rivera provided to Officer Garrett and concluded that the substances amounted to 2.5 grams of cocaine. Kovar stated that: (1) he had known Gardner as an inmate at the county jail for one-and-a-half to two years; (2) he spoke with Gardner on a daily basis; and (3) he was very familiar with the sound of Gardner's voice. After listening to the recorded audiotape submitted into evidence by the State, Kovar identified the voice of the individual selling the cocaine to Rivera as Gardner's. Moreover, both Officer Garrett and Kovar identified Gardner by his street names of "Seven" and "Seven Days."

9

As noted earlier, Gardner argues on appeal that the State failed to sufficiently corroborate the testimony of Matulik and Rivera. However, based on our review of the non-accomplice and non-covert evidence in the light most favorable to the jury's verdict, we conclude that the State has provided some non-accomplice and non-covert evidence that tends to connect Gardner to the commission of the offense alleged in the indictment. *See Brown*, 270 S.W.3d at 568; *Smith*, 211 S.W.3d at 478; *see also* TEX. CODE CRIM. PROC. ANN. arts. 38.14, 38.141. Gardner also argues that Kovar's testimony was not sufficiently corroborative of Rivera and Matulik's testimony because it was unreliable. However, the resolution of Kovar's testimony was within the province of the jury as the exclusive judge of the credibility of the witness and of the weight to be given to the testimony. *See Brown*, 270 S.W.3d at 568 (citing *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)). Because the State has provided some evidence connecting Gardner to the commission of the offense, we further conclude that the evidence corroborating Matulik and Rivera's testimony is sufficient, thus satisfying the corroboration requirements of articles 38.14 and 38.141. *See* TEX. CODE CRIM. PROC. ANN. arts. 38.14, 38.141; *see also Malone*, 253 S.W.3d at 257; *Dennis*, 151 S.W.3d at 749 (finding the corroborating evidence sufficient when the informant and his vehicle were searched prior to the purchase; the defendant was observed coming out of a house and approaching the informant's vehicle; the informant called the defendant by name; words on the audio recording indicated the exchange of a substance for $400; the officer identified one of the voices on the tape as the defendant's; and when the informant returned to meet the officer, he gave him the cocaine); *Jefferson v. State*, 99 S.W.3d 790, 792-93 (Tex. App.–Eastland 2003, pet. ref'd) (holding the corroborating evidence sufficient even though the informant

10

went by herself to a house to make the purchase because she had been searched prior to leaving; the officer watched her go into the house; the informant purchased $150 worth of cocaine; a recording was made of the transaction; the officer testified that the defendant's voice was on the recording; and the informant gave the officer cocaine when she returned to his vehicle). Accordingly, we overrule Gardner's sole issue on appeal.[2]

## IV. CONCLUSION

Having overruled Gardner's sole issue on appeal, we affirm the judgment of the trial court.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
18th day of March, 2010.

---

[2] Because we have concluded that the non-accomplice and non-covert evidence contained in the record sufficiently corroborated Matulik and Rivera's testimony, we need not address Gardner's argument that covert-witness testimony may not be corroborated by accomplice-witness testimony and vice versa. *See* TEX. R. APP. P. 47.1.