

# NUMBER 13-17-00103-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

JOHNNY LEE DAVIS,                                                                 Appellant,

v.

THE STATE OF TEXAS,                                                               Appellee.

### On appeal from the 36th District Court
### of Aransas County, Texas.

# MEMORANDUM OPINION
### Before Chief Justice Valdez and Justices Rodriguez and Benavides
### Memorandum Opinion by Justice Benavides

By two issues, appellant Johnny Lee Davis challenges his conviction for criminal solicitation, a second-degree felony. *See* TEX. PENAL CODE ANN. § 15.03 (West, Westlaw through 2017 1st C.S.). Davis alleges that: (1) the hearsay evidence allowed by the trial court violated his due process rights to a fair trial, and (2) the evidence was insufficient. We affirm.

# I.    BACKGROUND

Davis was charged by indictment of soliciting Jason Phillips to engage in conduct that would have resulted in the murder of Jenna Hernandez in 2012. *See id.* Hernandez was a witness in a case against Joshua Davis (Joshua), Davis's son. Joshua was in custody, facing a motion to revoke probation based partially on Hernandez's allegations against him. Shortly before Joshua's motion to revoke hearing, Hernandez was found dead, shot in the head. Another man, Lawrence Mireles, was convicted of Hernandez's murder. Mireles was Joshua's best friend and living with the Davis family around the time of Hernandez's death.

However, the State alleged that Davis, a member of the Dirty White Boys gang, initially solicited Phillips, a known Aryan Circle gang member, to arrange Hernandez's murder. Prior to trial, Davis argued that mention of gang membership should be excluded from the trial. The trial court ruled the State could present evidence of gang membership in a non-character purpose to show a motive, plan, opportunity, or other 404(b) exceptions. *See* TEX. R. EVID. 404(b)(2). The trial court also agreed to give a limiting instruction in the jury charge and granted Davis a running objection to the gang-related testimony.

At trial, the following was explained: Hernandez had been reported missing and was later found dead on June 28, 2012. Aransas Pass Police Department Captain Kyle Rhodes found this to be significant because it was determined through the investigation into her murder that Hernandez was scheduled to testify against Joshua at his motion to revoke hearing on the day she was found dead.

As the investigation into the murder progressed, Captain Rhodes was led to Davis as a possible involved party.[1] Captain Rhodes stated Phillips approached him and through their interview, a motive regarding Davis's involvement with Hernandez's death was discovered: "revenge." Phillips explained to Captain Rhodes that Davis had approached him multiple times, asking for his help to "take care" of Hernandez and Phillips knew Davis was angry about the situation[2] between Joshua and Hernandez.

Captain Rhodes also reviewed jail house phone calls between Davis and Joshua. Two relevant calls were placed on June 20, 2012, and June 27, 2012. The June 20 call had Davis telling Joshua "have Little Lawrence take care of that bullshit," which Captain Rhodes believed to be a reference to the murder of Hernandez. The second phone call, placed on June 27 had Davis stating to Joshua "one way or another, you're getting out of there tomorrow." The second phone call was placed the day before the scheduled motion to revoke hearing.

Phillips testified at trial that he had known Davis for over twenty years and Joshua used to be his godson. Phillips admitted to being a former member of the Aryan Circle gang and was the vice president of the free world members. Phillips stated he had never been violent, but others in the Aryan Circle were known to be. Phillips stated that Kim Longbine was his ex-girlfriend who also knew Davis and that she was partially the reason Phillips and Davis had a falling out.

---

[1] Davis was Mireles's alibi on the day of Hernandez's murder; he told law enforcement he had been with Davis. Mireles was also living with the Davis family at the time of the murder.

[2] Based on testimony, Joshua's motion to revoke was based on an altercation between Hernandez and Joshua, in which Hernandez was alleged to have stabbed Joshua.

During his testimony, Phillips relayed one instance on June 3, 2012, where Longbine, Davis, Davis's wife, also named Kim, and he traveled together to Cuero, Texas. During the trip, Davis turned to Phillips and stated that "the girl couldn't go to court." Phillips just "blew it off" and ignored his request. According to Phillips, a few days later, when they were drinking at Davis's home, Davis again requested that Phillips help with Hernandez but Phillips "blew it off, once again, to be just drunk talk" because they had been drinking. Davis approached Phillips a third time while they were both at Gold Digger, a bar owned by Davis's sister. At the bar, Phillips stated that Davis came to him and "he asked me if I would murder the little girl and I said, 'No, that we didn't do them kind of things in my family [Aryan Circle].'" Phillips also explained that Davis had offered him "ten grand if it could be done."

On cross-examination, Phillips said he thought the first two times Davis approached him about Hernandez were just drunk talk, but the third time, he knew Davis was serious because he had known Davis long enough to know the difference. Phillips agreed that Davis and he had a falling out over these requests, as well as Phillips being jealous regarding a relationship between Longbine and Davis. Phillips testified that he was not promised anything for his testimony, and that he had not testified to help out Longbine, who was in custody. Phillips explained he was not testifying due to any vendetta against Davis, but because he could not condone Hernandez's murder.

Longbine also testified at trial. She stated that she dated Phillips in 2012, and he was a high-ranking member of the Aryan Circle gang. Longbine met Davis in a halfway house in 2012 and knew him to be a member of the Dirty White Boys gang, although he was no longer a member. Longbine recalled the incident in the truck, but believed it had

4

occurred outside of Gold Digger on June 3, 2012. She overheard Davis tell Phillips that Hernandez could not show up for court, which Longbine took to mean Davis wanted Hernandez kidnapped. Longbine knew Davis to be the type of person who would do "anything to keep his kids out of prison. I mean, he would do anything for his kids period." Longbine agreed that she and Phillips were both drug users at the time and also stated she was getting no benefit from the State for her testimony.

Corpus Christi Gang Unit Sergeant Paul Lisowski testified to give background on the white supremacist gangs involved. He relayed to the jury that Joshua was a known member of the Peckerwoods gang, which is generally a gang that feeds into other white supremacist gangs. Sergeant Lisowski explained that the Aryan Circle gang was prevalent in the area and known for its violent nature. He believed that if a young girl stabbed a Peckerwood, then it was likely she would have been "made an example of." Additionally, Sergeant Lisowski stated that if a Dirty White Boy member wanted to retaliate against someone, he would have to ask permission of a high-ranking Aryan Circle member before doing so.

Davis presented evidence from his sister, Tabatha Elmore, who testified that she owned Gold Digger. Elmore stated she believed Longbine and Davis were dating in early 2012 and Phillips was jealous and distanced himself from Davis. Elmore also relayed that Davis and Phillips would not be in Gold Digger at the same time; if one was there, the other one would not come in.

The jury found Davis guilty of solicitation, and the trial court sentenced Davis to eighteen years' imprisonment in the Texas Department of Criminal Justice–Institutional Division. This appeal followed.

5

## II.     EVIDENCE WAS SUFFICIENT

By his second issue, which we address first, Davis argues the evidence was insufficient to support his conviction for solicitation.

### A.     Standard of Review

When evaluating a sufficiency challenge, the reviewing court views the evidence in the light most favorable to the verdict to determine whether a rational jury could find the defendant guilty beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To reverse a conviction based on insufficient evidence, Davis must show that no rational jury could have found all the elements of the offense beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 902. The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and a reviewing court is not to substitute its judgment as to facts for that of the jury as shown through its verdict. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). When the reviewing court is faced with a record supporting contradicting inferences, the court must presume that the jury resolved any such conflict in favor of the verdict, even if it is not explicitly stated in the record. *Id.*

A reviewing court must measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

6

## B. Applicable Law and Discussion

Under a hypothetically correct jury charge, the elements of criminal solicitation are: a person commits an offense if, with intent that a felony of the first degree be committed, he requests, commands, or attempts to induce another to engage in specific conduct that, under the circumstances surrounding his conduct as the actor believes them to be, would constitute the felony or make the other a party to its commission. TEX. PENAL CODE ANN. § 15.03(a). Additionally, a person may not be convicted under this section on the uncorroborated testimony of the person allegedly solicited and unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the actor's intent that the other person act on the solicitation. *Id.* § 15.03(b).

Davis alleges the State failed to prove he committed solicitation because there was no evidence of corroboration presented and there was insufficient evidence to show Davis solicited Phillips as an accomplice. "The corroboration requirement of section 15.03(b) reflects a legislative determination that accomplice testimony implicating another person should be viewed with a measure of caution." *Guthrie v. State*, 149 S.W.3d 829, 832 (Tex. App.—Waco 2004, pet. ref'd). The evidence must establish that the defendant acted with the specific intent that [murder] be committed. *Thomas v. State*, 31 S.W.3d 422, 424 (Tex. App.—Fort Worth 2000, pet. ref'd). The statute does not allow a conviction based solely on the uncorroborated testimony of the person allegedly solicited. *Id.* The test used to evaluate corroborating testimony requires us to eliminate from consideration the accomplice testimony and then determine whether there is other incriminating evidence tending to connect the defendant to the crime charged. *Richardson v. State*, 700 S.W.2d 591, 594 (Tex. Crim. App. 1985). In a criminal solicitation case, prosecuted under section

7

15.03(a), corroboration is required whether or not the "person allegedly solicited" to commit the crime is an *accomplice* witness. *Varvaro v. State*, 772 S.W.2d 140, 143 (Tex. App.—Tyler 1998, pet. ref'd) (emphasis in original). The non-accomplice evidence does not have to directly link the appellant to the crime, nor does it alone have to establish the appellant's guilt beyond a reasonable doubt; rather, it merely has to tend to connect the appellant to the offense. *Burks v. State*, 876 S.W.2d 877, 887 (Tex. Crim. App. 1994); *see Casey v. State*, No. 14-04-01165-CR, No. 14-05-00165-CR, 2006 WL 348164, *6 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (mem. op., not designated for publication). Further, although evidence of motive is insufficient in and of itself to corroborate an accomplice's testimony, it may be considered with other evidence to connect the accused with the crime. *Reed v. State*, 744 S.W.2d 112, 127 (Tex. Crim. App. 1988).

The State had to show that Davis requested, commanded, or attempted to induce another to engage in specific conduct that would be a felony or make Phillips a party to a felony. *See* TEX. PENAL CODE ANN. § 15.03(a). The penal code does not require Phillips to be an accomplice to the offense. Phillips testified he was approached by Davis on multiple occasions requesting assistance to "take care of" Hernandez. Longbine's testimony confirmed that at least one of the attempts of solicitation took place in her presence. Although Phillips and Longbine differed in where they stated the conversation requesting Phillips's assistance took place, they both agreed it occurred in Davis's vehicle and they were headed to Cuero.

In addition to the testimony of Phillips and Longbine, the State points out the jury also heard the jail calls between Joshua and Davis that provide a connection to the offense of Hernandez's murder. The reference to Mireles, the dates the phone calls were made,

8

and the reference to Joshua's release from custody all tend to connect Davis to the eventual murder of Hernandez.

The State also provided testimony from Captain Rhodes and Sergeant Lisowski. Captain Rhodes testified about the details of the underlying murder of Hernandez, how the information he received led him to believe Davis was involved, and how Davis orchestrated Hernandez's death. Sergeant Lisowski expanded on how white supremacists gangs in the area operated and why Davis would have initially come to Phillips with his request.

Viewing the testimony in the light most favorable to the verdict, we cannot say that the evidence was legally insufficient. *See Thomas*, 31 S.W.3d at 426. The testimony of the State's witnesses was sufficient to satisfy the corroboration requirement. *See id.* We overrule Davis's second issue.

### III. EVIDENCE WAS PROPERLY ADMITTED

By his first issue, Davis argues that the testimony regarding gang affiliation was hearsay and violated his due process right to a fair trial.

### A. Standard of Review

We review a trial court's ruling to admit evidence for an abuse of discretion. *Taylor v. State*, 268 S.W.3d 571, 578–79 (Tex. Crim. App. 2008). However, to reverse a trial court's determination, we must find the trial court's ruling lies outside the zone of reasonable disagreement. *Id.* In applying an abuse of discretion standard, we will not disturb the trial court's evidentiary ruling if it is correct under any applicable theory of law. *De la Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). Error in the admission of evidence is non-constitutional error and is subject to a harm analysis under Rule 44.2(b)

of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 44.2(b); *Taylor*, 286 S.W.3d at 592. "We have construed this to mean that an error is only reversible when it has a substantial and injurious effect or influence in determining the jury's verdict." *Id.* "We should not overturn the conviction if we have fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect." *Id.*

## B.     Applicable Law

### 1.     Hearsay Testimony

Hearsay is inadmissible unless it falls under an exception identified in the Rules of Evidence or is allowed by other rules prescribed by statute. *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011); *see* TEX. R. EVID. 803, 804. "Once the opponent of hearsay evidence makes the proper objection, it becomes the burden of the proponent of the evidence to establish that an exception applies that would make the evidence admissible in spite of its hearsay character." *Taylor*, 268 S.W.3d at 578–79. The exception argued by the State is found under Texas Rule of Evidence 404(b). *See* TEX. R. EVID. 404(b).[3]

####          a.     Rule 404(b)

"When a party attempts to adduce evidence of 'other crimes, wrongs, or acts,' in order to preserve error on appeal, the opponent of the evidence must object under rule 404(b) in a timely fashion." *Almaguer v. State*, 492 S.W.3d 338, 353 (Tex. App.—Corpus Christi 2014, no pet.) (citing *Montgomery v. State*, 810 SW.2d 372, 387 (Tex. Crim. App. 1990) (en banc)); *see* TEX. R. EVID. 404(b). "Once a complaint is lodged, it is incumbent

---

[3] During the hearing, Davis asked the trial court to conduct a "balancing test" which we infer to be a reference to the rule 403/rule 404(b) balancing test. *See* TEX. R. EVID. 403, 404(b).

10

upon the proponent of the evidence to satisfy the trial court that the 'other crime, wrong, or act' has relevance apart from its tendency 'to prove character of a person in order to show that he acted in conformity therewith.'" *Almaguer*, 492 S.W.3d at 353 (citing TEX. R. EVID. 404(b)). If the trial court determines the evidence has no relevance apart from character conformity, then the evidence is absolutely inadmissible, and the trial court has no discretion to admit it. *Id.* However, the proponent of the evidence may persuade the trial court that the 'other crime, wrong, or act' has relevance apart from character conformity in order for such evidence to be deemed admissible. *Id.*; *see* TEX. R. EVID. 404(b).

"Merely introducing evidence for a purpose other than character conformity, or any of the other enumerated purposes in rule 404(b), does not, by itself, make that evidence admissible." *Webb v. State*, 36 S.W.3d 164, 179 (Tex. App—Houston [14th Dist.] 2000, pet. ref'd)); *see* TEX. R. EVID. 404(b). The extraneous offense must also be relevant to a 'fact of consequence' in the case. *Webb*, 36 S.W.3d at 179 (citing *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996)).

### b. Rule 403

"Once an objection is made under Rule 403, the trial court is called upon to weigh the probativeness of the evidence against its potential for 'unfair' prejudice—that is, 'its tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Almaguer*, 492 S.W.3d at 353; *see* TEX. R. EVID. 403; *Montgomery*, 810 S.W.2d at 389. "Rule 403 imposes a duty upon the trial court to inquire from the opponent about the purported prejudice from the admission of evidence." *Almaguer*, 492 S.W.3d at 353. "Once Rule 403 is invoked, however, the trial court must engage in a balancing test."

*Id.* "The language of Rule 403 that evidence 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,' simply means that trial courts should favor admission in close cases, in keeping with the presumption of admissibility of relevant evidence." *Id.*; *see* TEX. R. EVID. 403. "Unfair prejudice does not arise from the mere fact that evidence injures a party's case. Virtually all evidence that a party offers will be prejudicial to the opponent's case, or the party would not offer it." *Casey v. State*, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007).

### 3. Discussion

Davis alleges that gang affiliation testimony from Captain Rhodes and Sergeant Lisowski and hearsay testimony by Captain Rhodes were allowed in violation of Davis's rights.

The trial court held a pre-trial hearing on Davis's motion to exclude mention of gang affiliation at trial. After hearing evidence and arguments from both parties, the trial court ruled that the State could present testimony regarding Davis and other witnesses' gang affiliation under the exceptions for rule 404(b), which would include being relevant to show non-character purpose. *See* TEX. R. EVID. 404(b). The State alleged it would use gang affiliation to prove Davis had an opportunity for the solicitation to occur and the evidence went to plan, motive, preparation, and opportunity, all exceptions under rule 404(b). *See id.*(b)(2).

Captain Rhodes testified that during the course of the Hernandez murder investigation, he learned Davis was a member of the Dirty White Boys gang. Davis objected to the testimony on the grounds of relevance and 403 and was granted a running objection by the trial court. *See id.* 403. Captain Rhodes also stated that Phillips identified

12

Davis as a member of the Dirty White Boys prison gang. Davis objected and a limiting instruction was given to the jury to not consider the reference for any purpose.

Sergeant Lisowski testified as an expert regarding his knowledge of white supremacist gangs in the Corpus Christi area. He stated he had spent a good portion of his tenure dealing with Aryan Nation gangs, which included the Aryan Circle, Dirty White Boys, and to some extent, the Peckerwoods. Davis objected to this testimony on the basis of relevance and was granted a running objection. Sergeant Lisowski testified generally regarding the gangs and did not make a specific reference to Davis in his testimony. During his testimony, the trial court issued a limiting instruction to the jury in which he explained that they were only to consider the testimony for the "purpose of plan or opportunity or intent, if there is any, shown for the commission of the offense."

In reviewing the testimony and the trial court's rulings, we do not find that the trial court acted arbitrarily and outside the scope of reasonable disagreement. *See Taylor*, 268 S.W.3d at 578–79. "Texas courts have held numerous times that evidence of a defendant's gang affiliation is relevant under particular circumstances." *Sanchez v. State*, 444 S.W.3d 215, 221 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (collecting cases); *see Smith v. State*, 355 S.W.3d 138, 154 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) ("Gang membership is admissible to show bias, motive, or intent, or to refute a defensive theory."). Here, the trial court could have reasonably determined that Davis's gang affiliation tended to show a motive for the solicitation in at least two ways. First, gang custom required Davis to ask Phillips, a senior leader of the gang, for permission to go ahead with the murder, which led him to commit the offense of soliciting Phillips. Second, according to Sergeant Lisowski, when Hernandez stabbed Joshua, this would have

13

provoked a strong reaction in Davis due in part to his gang-related desire to "make an example" out of her and thereby show his that his gang was not to be trifled with.

The trial court explained the balancing test it conducted prior to the beginning of trial. Although Captain Rhodes partially relied on information received from Phillips, Phillips and Longbine both identified Phillips and Davis as members of white supremacist gangs. Sergeant Lisowski provided background information on the gangs themselves and not in reference to specific facts of this particular case. Therefore, we hold the trial court did not abuse its discretion in allowing in the gang testimony in this case. We overrule Davis's first issue.

## IV. CONCLUSION

We affirm the judgment of the trial court.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
26th day of July, 2018.